MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2013 ME 72
Docket:        Was-12-579
Argued:        June 11, 2013
Decided:       August 1, 2013

Panel:      SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
            JABAR, JJ.


PHYLLIS BRADBURY et al.

v.

CITY OF EASTPORT et al.


SILVER, J.

[¶1]   Phyllis Bradbury and David Gholson (collectively, plaintiffs) appeal

from an order of the Superior Court (Washington County, *R. Murray, J.*) denying

their special motion to dismiss the counterclaims of First Perry Realty, LLC, CPM

Constructors, and the City of Eastport (collectively, defendants) pursuant to

Maine's anti-SLAPP statute, 14 M.R.S. § 556 (2012).[1]   This appeal gives us the

opportunity to determine the limits of a court's discretion to disallow the late filing

of an anti-SLAPP motion.   Plaintiffs argue that the court erred or abused its

discretion in declining to address the merits of their special motion to dismiss

despite their failure to file the motion within the sixty-day period provided by the

statute.   Plaintiffs further argue that the court should have granted their special

---

[1]   Parties in interest Friends of the Boat School Marine Services Development Corporation and Moose Island Marine, Inc., are also parties to this appeal.

2

motion to dismiss because defendants' counterclaims for tortious interference with a contract and slander of title are based on plaintiffs' petitioning activity. We affirm the judgment.

## I. BACKGROUND

[¶2]  In early 2011, the City began efforts to sell a seventeen-acre, oceanfront property located at 16 Deep Cove Road, known as "the Boat School." The City's charter gives the City Manager the power to sell City property "only after such sale has been authorized and advertised by the City Council." The charter does not define "advertised."

[¶3]  After widely publicized negotiations for the sale of the Boat School failed, the City Council entertained offers to purchase the Boat School at properly noticed public meetings in August and September 2011. At a September 1 meeting, after public comment, including comment by plaintiff Gholson, the City Council voted to approve a sale of the Boat School to First Perry and CPM. The details of the purchase and sale agreement were discussed at another meeting on September 21, 2011. After further public comment, again including comment by Gholson, the Council voted to authorize the City Manager to execute the agreement, which he did the next day. At another properly noticed public meeting on October 12, 2011, the date of the closing was identified as October 28, 2011, and the Council authorized the City Manager to effectuate the sale.

[¶4]   The transaction did not close on October 28, as planned.   On October 20, 2011, plaintiffs filed a complaint in the Superior Court seeking a declaratory judgment that the agreement was invalid due to the City's failure to advertise in accordance with its charter, and moved for a temporary restraining order to prevent the sale of the property.   The court denied the motion on October 28, 2011.   On December 1, 2011, after placing notices of the sale of the Boat School in the Bangor Daily News on November 17 and 20, 2011, the City conveyed the Boat School to First Perry.   On January 3, 2012, plaintiffs recorded a notice of lis pendens in the Washington County Registry of Deeds.

[¶5]   On January 11, 2012, the court permitted plaintiffs to file an amended complaint adding several parties in interest, and denied defendants' motions to dismiss pursuant to M.R. Civ. P. 12.   Later that month, defendants filed counterclaims against plaintiffs for slander of title and tortious interference with a contract.   First Perry and CPM's counterclaims alleged that plaintiffs had slandered First Perry's title to the Boat School and tortiously interfered with First Perry's contract with the City "[b]y alleging that the City did not 'advertise' the sale of the Boat School Property in accordance with the City's Charter."   The City likewise alleged that plaintiffs "filed their complaint in an attempt to intimidate or induce the City of Eastport to renege" on the contract.   The parties in interest filed a counterclaim similar to the City's on April 5, 2012.

4

[¶6] On May 22, 2012, plaintiffs moved for summary judgment on their claim seeking a declaratory judgment, and on the defendants' counterclaims. In their supporting memorandum, plaintiffs argued that the "sole basis" for the counterclaims was plaintiffs' filing of the complaint. In opposing plaintiffs' motion, defendants raised the plaintiffs' recording of the notice of lis pendens as a basis for their counterclaims, and presented evidence of emails from plaintiff Gholson to third parties during the pendency of the litigation disparaging defendants and the sale of the Boat School as a "backroom deal." On June 19, 2012, First Perry and CPM filed a motion for summary judgment on plaintiffs' complaint. On August 30, 2012, while the motions for summary judgment remained pending, plaintiffs filed a special motion to dismiss the defendants' counterclaims pursuant to the anti-SLAPP statute. A hearing on the various motions was held on September 28, 2012.

[¶7] On November 15, 2012, the court granted First Perry and CPM's motion for summary judgment on plaintiffs' complaint, concluding that the City had sufficiently advertised the sale of the Boat School. The court also granted plaintiffs' motion for summary judgment as to defendants' counterclaim for tortious interference with a contract because the counterclaim was based on the plaintiffs' recording of a notice of lis pendens, which was "directly related to this judicial proceeding . . . [and] absolutely privileged." As to defendants'

counterclaim for slander of title, the court granted plaintiffs' motion for summary judgment to the extent that the counterclaim was based on the plaintiffs' notice of lis pendens, but denied the motion insofar as the counterclaim rested upon evidence of "separate allegedly slanderous statements" by the plaintiffs, which defendants had not yet had an adequate opportunity to develop through discovery.

[¶8]   In the same order, the court declined to consider the merits of plaintiffs' special motion to dismiss because it was filed more than sixty days after service of the counterclaims.  Although recognizing its discretion to permit the filing of a motion after the expiration of the sixty-day statutory period, the court declined to do so, noting that (1) plaintiffs provided "[n]o valid reason" for their delay in filing the motion, (2) plaintiffs failed to submit a request to file the motion late, (3) plaintiffs filed the motion "after the filing of all the other pending motions and responses," and (4) plaintiffs' motion was "contemporaneous with certain efforts to engage in further discovery activity in this case" and had the effect of staying discovery pursuant to the anti-SLAPP statute.  The court therefore denied the motion.  Plaintiffs appealed,[2] and proceedings in the trial court were stayed.

---

[2]  We allow interlocutory appeals from denials of anti-SLAPP special motions to dismiss.  *Nader v. Me. Democratic Party (Nader II)*, 2013 ME 51, ¶ 12, 66 A.3d 571.

## II. DISCUSSION

### A. The Anti-SLAPP Statute

[¶9] Maine's anti-SLAPP statute, 14 M.R.S. § 556, "permits defendants to file a special motion to dismiss civil claims against them that are based on the defendants' exercise of the constitutional right to petition." *Nader v. Me. Democratic Party (Nader II)*, 2013 ME 51, ¶ 12, 66 A.3d 571. "SLAPP," an acronym for "Strategic Lawsuit Against Public Participation," refers to meritless lawsuits filed to dissuade or punish a party's exercise of its constitutional rights by imposing on it the delays and costs associated with litigation. *Morse Bros. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842. The purpose of the anti-SLAPP statute and the special motion to dismiss is to provide a "procedural mechanism to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the government, *and to do so at an early stage before the defendant incurs great expense.*" *Nader II*, 2013 ME 51, ¶ 12 n.8, 66 A.3d 571 (emphasis added) (quotation marks omitted); *see also Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226 (indicating that the special motion to dismiss is "designed to minimize the litigation costs associated with the defense of . . . meritless suits").

[¶10] "[T]he typical mischief that [the statute] intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly

against development projects." *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169 (quotation marks omitted); *see also Nader v. Me. Democratic Party (Nader I)*, 2012 ME 57, ¶ 14, 41 A.3d 551 (stating that the purpose of the statute is to prevent chilling of First Amendment rights by "threatening would-be activists with litigation costs" (quotation marks omitted)). Anti-SLAPP statutes, however, have proven to be capable of abuse and tactical manipulation. *See, e.g.*, *Olsen v. Harbison*, 35 Cal. Rptr. 3d 909, 913, 916 (Ct. App. 2005) (recognizing the "ironic unintended consequence that anti-SLAPP procedures, enacted to curb abusive litigation, are also prone to abuse" and the possibility of "tactical manipulation of the stays that attend anti-SLAPP proceedings").

[¶11] In this appeal, we are called upon for the first time to interpret a provision of the statute limiting the time in which a special motion to dismiss may be brought. The statute provides that "[t]he special motion to dismiss may be filed within 60 days of the service of the complaint[3] or, in the court's discretion, at any later time upon terms the court determines proper." 14 M.R.S. § 556. Plaintiffs argue that courts should permit the filing of special motions beyond the sixty-day

---

[3] Although the statute uses the word "complaint," we interpret the sixty-day period as running from the date of service of the challenged pleading, as the statute expressly permits special motions to dismiss "civil claims, counterclaims or cross claims," which may or may not themselves be served within sixty days of the complaint. *See* 14 M.R.S § 556; *see also Eagle Rental, Inc. v. State Tax Assessor*, 2013 ME 48, ¶ 11, 65 A.3d 1278 (stating that we interpret the plain language of statutes to "avoid absurd, illogical, or inconsistent results" (quotation marks omitted)).

8

period unless "the motion is filed so late in the litigation process as to frustrate the purposes of the statute, where the motion is without merit, or where the late filing has caused prejudice to the respondent."

[¶12]  On the few occasions we have interpreted the anti-SLAPP statute, "[w]e have striven to interpret the anti-SLAPP statute in accordance with its plain language."  *Nader I*, 2012 ME 57, ¶ 18, 41 A.3d 551.  We interpret any statute according to its plain language, and only look to other indicia of legislative intent, including the purpose of the statute, if the statute is ambiguous.  *See Sparks v. Sparks*, 2013 ME 41, ¶ 14, 65 A.3d 1223.  The statute clearly leaves the filing of a special motion to dismiss after the sixty-day period to the discretion of the court.  *See* 14 M.R.S. § 556.  Our review for an abuse of discretion generally involves three questions:

> (1) are factual findings, if any, supported by the record according to the clear error standard[?] (2) did the court understand the law applicable to its exercise of discretion[?] and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness[?]

*Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074; *see also Smith v. Rideout*, 2010 ME 69, ¶ 13, 1 A.3d 441 (outlining circumstances in which we have found an abuse of discretion).

[¶13]  Plaintiffs' interpretation of the statute—that courts are required to permit the late filing of an anti-SLAPP motion unless the nonmoving party would

be prejudiced or the motion is meritless—would conflict with the statute's language. Nothing in the statute indicates that the court's discretion depends upon a showing of prejudice to the nonmoving party. *See Olsen*, 35 Cal. Rptr. 3d at 915-16 (declining to read into the sixty-day provision of California's anti-SLAPP statute a requirement that the nonmoving party demonstrate prejudice). Moreover, if the court's discretion to permit an untimely special motion were tied to the merits of the motion, the sixty-day provision would be entirely meaningless. *See Chitsazzadeh v. Kramer & Kaslow,* 130 Cal. Rptr. 3d 910, 914 (Ct. App. 2011) (holding that an interpretation requiring courts to consider the merits of an untimely anti-SLAPP motion would "negate" the sixty-day provision of California's anti-SLAPP statute); *Olsen*, 35 Cal. Rptr. 3d at 915 ("Discretion to permit or deny an untimely motion cannot turn on the final determination of the merits of the motion."); *see also Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271 ("All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.").

[¶14] We therefore hold that, in declining to exercise its discretion to permit a special motion to dismiss after the expiration of the sixty-day statutory period, a court need not consider the merits of the motion or find that the nonmoving party would be prejudiced. Rather, after the sixty-day period, the court has broad discretion in determining whether, consistent with the purposes of the anti-SLAPP

10

statute, a party may file a special motion to dismiss. In light of the interpretation of the statute we have now articulated, we turn to the facts of this case.

B.     Analysis

[¶15] Plaintiffs filed their special motion to dismiss approximately seven months after defendants filed their counterclaims, and approximately five months after the parties in interest filed their counterclaim. In declining to address the merits of plaintiffs' special motion, the court noted that (1) plaintiffs provided "[n]o valid reason" for their delay in filing the motion, (2) plaintiffs failed to submit a request to file the motion late, (3) plaintiffs filed the motion "after the filing of all of the other pending motions and responses," and (4) plaintiffs' motion was "contemporaneous with certain efforts to engage in further discovery activity in this case" and had the effect of staying discovery pursuant to the anti-SLAPP statute. Plaintiffs contend that "[e]ach of these findings is in error."

[¶16] Plaintiffs argue that, contrary to the court's findings, they "did request acceptance of their late filing and explain the reasons" for their delay. Specifically, plaintiffs note that they stated in their special motion:

> While reviewing the affidavits presented by the Defendants [in opposition to plaintiffs' motion for summary judgment], it became clear to Plaintiffs that Defendants' factual claims relate exclusively to statements made by Plaintiffs in pursuing the present lawsuit, or in encouraging others to take political or judicial action to prevent or remedy the Sale of the Boat School. As such, Plaintiffs are asking

that the Court recognize the present Motion despite the fact that it is being filed more than 60 days after the filing of the counterclaims.

Contrary to plaintiffs' contentions, the record reflects that, although plaintiffs recognized in their special motion to dismiss that their motion was untimely, they filed the motion without first requesting leave of court to do so. Plaintiffs' argument also fails to take into account the court's finding that plaintiffs had presented no *valid* reason for their delay in filing the motion. The record belies plaintiffs' claim that they only became aware of the basis of the counterclaims from the defendants' summary judgment filings. The counterclaims explicitly stated that they were based on the filing of the plaintiffs' complaint, and the plaintiffs recognized in their memorandum in support of their motion for summary judgment that their complaint was the "sole basis" for the counterclaims. In any event, plaintiffs' special motion was not filed within sixty days of service of the affidavits that plaintiffs claim finally alerted them to the basis for the counterclaims.

[¶17] Plaintiffs also appear to suggest that the timing of their motion was "reasonable given the procedural history of the case," because their motion for summary judgment, filed May 22, 2012, "was intended to resolve all of Plaintiffs' claims and Defendants' counterclaims without the need for further litigation." Plaintiffs do not explain how the mere possibility that the court might grant their

motion for summary judgment renders their five- to seven-month delay in filing their special motion to dismiss reasonable or the court's decision an abuse of discretion. The purpose of the special motion to dismiss is to terminate SLAPP litigation "at an early stage before the [moving party] incurs great expense." *Nader II*, 2013 ME 51, ¶ 12 n.8, 66 A.3d 571 (quotation marks omitted). This purpose was not served by plaintiffs' postponement of their special motion until after the parties had expended significant time and resources litigating the cross-motions for summary judgment.

[¶18] Finally, plaintiffs argue that the court improperly relied on the contemporaneous filing of the special motion to dismiss with "certain efforts to engage in further discovery," because the purpose of the anti-SLAPP statute is to "prevent movants from having to endure litigation costs to defend meritless claims brought as retaliation for exercise of their First Amendment rights." While plaintiffs are correct that the special motion is "designed to minimize the litigation costs associated with the defense of . . . meritless suits," *Schelling*, 2008 ME 59, ¶ 6, 942 A.2d 1226, nothing in the statute prohibits the court from considering the procedural posture of the case in evaluating an untimely special motion to dismiss, especially given the recognized potential for abuse and tactical manipulation of anti-SLAPP statutes, *see Olsen*, 35 Cal. Rptr. 3d at 913, 916. The court did not abuse its discretion in declining to consider the merits of plaintiffs' untimely

special motion to dismiss. Because we conclude that the court did not abuse its discretion in so ruling, we do not reach plaintiffs' argument on the merits of their motion.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Kristin M. Collins, Esq., Kelly & Collins, LLC, Belfast, for appellants Phyllis Bradbury and David Gholson

Dennis L. Mahar, Esq., Fletcher & Mahar, Calais, for appellees City of Eastport, Friends of the Boat School, Marine Services Development Corp., and Moose Island Marine, Inc.

Paul M. Koziell, Esq., and Julia G. Pitney, Esq, Drummond & Drummond, LLP, Portland, for appellees First Perry Realty, LLC and CPM Constructors

**At oral argument:**

Kristin M. Collins, Esq., for appellants Phyllis Bradbury, et al.

Dennis L. Mahar, Esq., for appellees City of Eastport, Friends of the Boat School, Marine Services Development Corp., and Moose Island Marine, Inc.

Paul M. Koziell, Esq., for appellees First Perry Realty, LLC, et al.

Washington County Superior Court docket number 2011-39
FOR CLERK REFERENCE ONLY