STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, SS.                         CIVIL ACTION
                                        DOCKET NO. CV-13-310

ALLISON DICKEY,

        Plaintiff,

                                STATE OF MAINE
                                Cumberland, ss, Clerk's Office

                                JUN 2 9 2015

                                RECEIVED          ORDER

        v.
JENNIFER GOLDBLATT and
DOUGLAS GOLDBLATT,

        Defendants.


## I. BACKGROUND

### A. Procedural Posture

Plaintiff Allison Dickey ("Dickey") brings this action against Jennifer and Douglas Goldblatt ("the Goldblatts") alleging claims for (1) defamation, (2) malicious prosecution, (3) breach of contract, (4) quantum meruit, (5) fraud, and (6) tortious interference with business relations. The Goldblatts answered and brought three counterclaims for (1) fraud, (2) conversion, and (3) punitive damages. Before the court is Defendants' special motion to dismiss counts 1, 2, and 6 of the complaint and Plaintiff's motion to dismiss Defendants' fraud counterclaim.

### B. Facts

The relevant facts can be briefly summarized as follows. In 2010, Jennifer and Douglas Goldblatt hired Allison Dickey to work as a nanny for their son, James. The Goldblatts lived in Scarborough at the time. In March 2011, the Goldblatts left Maine and moved to Georgia. They kept in touch with Dickey and eventually asked her to come live with them and nanny for James and their second son, Zachary, for the summer of 2012. Dickey agreed and the Goldblatts arranged for Dickey to fly to Georgia.

When Dickey arrived in July of 2012, Mrs. Goldblatt gave Dickey a Diners Club International credit card ("the credit card"). While living with the Goldblatts and caring for James and Zachary, Dickey used the credit card to purchase household items for the Goldblatt home, toys and medicine for the children, and other items.[1] Dickey returned to Maine on August 27, 2012. On September 26, 2012, Mrs. Goldblatt and Dickey spoke over the phone. Mrs. Goldblatt stated Dickey had charged the credit card $10,000 for unauthorized purchases and informed her that they would press criminal charges.

The Goldblatts thereafter reported Dickey to the Cape Elizabeth Police Department and the Alpharetta, Georgia Police Department. Dickey was charged with one count of theft by unauthorized taking or transfer in the Unified Criminal Docket (Docket No. CUMCD-CR-12-7669). (Dickey Aff. Ex. C.) The court entered a deferred disposition and Dickey paid $10,827.00 in restitution. (Id.; Dickey Aff. Ex. E.)

## II. DISCUSSION

A.    Anti-SLAPP

Maine's anti-Strategic Litigation Against Public Participation ("SLAPP") statute states in part:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

---

[1] The parties dispute the scope of the Goldblatts' authorization to allow Dickey to use the credit card, particularly for her own personal purchases.

2

14 M.R.S. § 556. "The anti-SLAPP statute is designed to allow a defendant to file a special motion to dismiss a lawsuit that a plaintiff brings with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs." *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 14, 41 A.3d 551 (internal citation omitted).

On a special motion to dismiss, the court conducts a two-step analysis. The first step requires the court to determine whether the statute applies: the party moving to dismiss "carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Nader*, 2012 ME 57, ¶ 15, 41 A.3d 551. If the movant carries this burden, the court proceeds to the second step, where the non-moving party has the burden "to establish, through pleadings and affidavits, that the moving party's exercise of its right of petition (1) was 'devoid of any reasonable factual support or any arguable basis in law,' and (2) 'caused actual injury' to the nonmoving party." *Id.* ¶ 16 (citations omitted). If the nonmoving party fails to establish both, the court must grant the special motion to dismiss. *Id.*

The statute contemplates a timeline for filing, which is particularly relevant here: "The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper." 14 M.R.S. § 556. Whether to consider the special motion beyond the 60 days is within the discretion of the trial court. *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 12, 72 A.3d 512 (reviewing denial of special motion under abuse of discretion standard).

In *Bradbury v. City of Eastport*, the Law Court held that when considering a special motion filed beyond the sixty-day time period, the court need not consider the motion's merits or

3

make findings as to the prejudice to the nonmoving party. 2013 ME 72, ¶ 14, 72 A.3d 512. "[T]he court has broad discretion in determining whether, consistent with the purposes of the anti-SLAPP statute, a party may file a special motion to dismiss" outside the sixty-day period. *Id.* In *Bradbury*, the defendant did not file the special motion to dismiss until approximately seven months after the suit commenced. The trial court denied the special motion to dismiss as untimely and the Law Court affirmed.

Dickey's complaint was filed with this court on July 18, 2013; the Goldblatts filed the special motion to dismiss on October 9, 2014. The Goldblatts thus waited over fourteen months after commencement to move to dismiss Dickey's claims under the anti-SLAPP statute.[2] As a preliminary matter, the Goldblatts failed to first request leave of court to file the special motion outside the time limit. *See* 14 M.R.S. § 556 (special motion may be filed "at any later time upon terms the court determines proper" in the court's discretion). More crucially, the Goldblatts provide no explanation in the motion for their decision to wait over a year beyond the sixty-day time period to file. They simply assert there will be no prejudice. The parties have already engaged in months of contentious discovery. The special motion is intended to provide defendants a "procedural mechanism to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right

---

[2] In their special motion, the Goldblatts only move to dismiss Count 1, 2, and 6 of Dickey's complaint. The language of the anti-SLAPP statute, however, suggests that selective dismissal of only certain claims is not available. *See* 14 M.R.S. § 556 ("When a moving party asserts that *the* civil claims, counterclaims or cross claims against the moving party . . . .") (emphasis added). If the statute is intended to provide relief to defendants faced with a frivolous lawsuit, this interpretation makes sense. *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226 (observing anti-SLAPP statute "is designed to guard against meritless lawsuits brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs.") Using the special motion to summarily dispose of half of Dickey's claims would appear to further the "abuse and tactical manipulation" with which anti-SLAPP litigation has become associated. *Bradbury*, 2013 ME 72, ¶ 10, 72 A.3d 512. It also highlights the tension between the statute and the Maine Constitution. *See Nader*, 2012 ME 57, ¶¶ 40-52, 41 A.3d 551 (Silver, J.) (concurring). The court ultimately need not decide whether defendants can use the statute to knock out claims in piecemeal fashion because the Goldblatts motion is untimely.

4

to petition the government, *and to do so at an early stage before the defendant incurs great expense.*" *Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 12 n.8, 66 A.3d 571 (emphasis added) (quotation marks omitted); *see also Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226 (anti-SLAPP's special motion minimizes litigation costs on parties forced to defend meritless lawsuits). In light of the fact the Goldblatts have not provided any reason for the delay, the significance of timing to the special motion's purpose as a procedural device, and the fact motion only requests to dismiss some claims, the court concludes the purposes of the statute would not be served by dismissal. The court thus declines to entertain the merits of the motion at this late stage. The Goldblatts special motion to dismiss is denied.

B.      Motion to Dismiss

Dickey cross-moves to dismiss the Goldblatts' fraud counterclaim under M.R. Civ. 12(b)(6).

1. Motion to Dismiss Standard

The court first views the facts alleged in the complaint as admitted, *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, and then considers whether the claimant "sets forth elements of a cause of action or alleges facts that would entitle the [claimant] to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391 (citation omitted). To dismiss for failure to state a claim, the court must determine it is "beyond doubt that [the claimant] is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995).

2. Whether the Goldblatts Adequately Plead Fraud

Because the Goldblatts' fraud claim "alleges a failure to disclose rising to the level of a misrepresentation, [the Goldblatts] must prove either (1) active concealment of the truth, or (2) a

5

specific relationship imposing on [Dickey] an affirmative duty to disclose." *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995). Dickey argues the counterclaim fails to state a claim for relief, arguing specifically that (1) the Goldblatts fail to plead with particularity how she "actively concealed" the fraud, and (2) no fiduciary relationship existed because the Goldblatts do not allege that Dickey was in a superior position of influence to create such a relationship.

The Goldblatts' counterclaim states "Ms. Dickey had a special or fiduciary relationship with the Goldblatts that imposed on her an obligation to disclose her use of the Goldblatts' credit card for personal purchases." (Counterclaim ¶ 22.) The Goldblatts allege no other facts regarding the nature of this relationship. The Law Court has repeatedly stated that a general allegation of a fiduciary relationship is not adequate to state a claim. *See Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶¶ 20-21, 738 A.2d 839 ("Recitation of those basic elements cannot substitute for an articulation in the complaint of the specific facts of a particular relationship."). At best, the Goldblatts have alleged facts that establish a relationship of trust based on her friendship or employment. In the absence of a disparity of power and influence, however, this does not rise to a fiduciary relationship. *See id.*

This leaves the "active concealment" theory. "'Active concealment of the truth' connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 24, 742 A.2d 898. It is not enough to simply conceal. "Active" means the wrongdoer must affirmatively hide or misrepresent the truth to the defrauded party. *Id.* The counterclaim makes no allegation that Dickey took *affirmative* steps to conceal the truth or made any affirmative misrepresentation as to her use of the credit card. Like the allegation of the fiduciary relationship, the Goldblatts baldly allege active concealment without substantiating the

6

claim. This is insufficient to survive a motion to dismiss. *See America v. Sunspray Condo. Ass'n,* 2013 ME 19, ¶ 13, 61 A.3d 1249 ("[M]erely reciting the elements of a claim is not enough."). The fraud counterclaim is dismissed.

### III. CONCLUSION

For the reasons set forth above, the purposes of the anti-SLAPP statute would not be served by allowing the Goldblatts to move to dismiss half of Dickey's claims well over a year after commencement. The Goldblatts additionally fail to plead the fraud counterclaim with sufficient particularity. The claim is therefore dismissed.

The docket entry will be:

> The Defendant's special motion to dismiss is hereby DENIED as untimely. The Plaintiff's cross-motion to dismiss Defendants' fraud counterclaim is GRANTED.

DATED: June **26**, 2015

Roland Cole
Chief Justice, Superior Court

Plaintiff-Seth Brewster Esq/Erica Johanson Esq
Defendants-Brendan Rielly Esq

7