MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 99
Docket:      Cum-15-365
Argued:      April 5, 2016
Decided:     May 18, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     JABAR, J.

## DANA DESJARDINS

v.

## MICHAEL REYNOLDS

GORMAN, J.

[¶1]  Dana Desjardins appeals from a judgment of the Superior Court (Cumberland County, *Warren, J.*) dismissing his complaint against Michael Reynolds for defamation and false light invasion of privacy.  Desjardins contends that the court erred by concluding that his complaint was barred by application of Maine's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute, 14 M.R.S. § 556 (2016).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In August of 2013, Desjardins, a town official for the Town of Raymond, instituted a lawsuit in the Superior Court against Michael

2

Reynolds,[1] a Town selectman, alleging that Reynolds had made various false statements to the Cumberland County Sheriff's Office about Desjardins's alcohol use for the purpose of humiliating and harassing Desjardins. Desjardins also alleged that as a result of those reports, Desjardins was stopped on his way to a Town meeting on January 8, 2013, by a sheriff's deputy who was investigating him for possibly operating under the influence. *See* 29-A M.R.S. § 2411 (2016). Desjardins asserted causes of action for defamation, negligent infliction of emotional distress, intentional infliction of emotional distress, and false light invasion of privacy, and sought damages for his "humiliation," "emotional distress," and "loss of reputation," as well as punitive damages and injunctive relief. Desjardins also asserted two claims based on federal statutes—for Reynolds's violation of 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 115-30), and seeking attorney fees pursuant to 42 U.S.C.S. § 1988 (LEXIS through Pub. L. No. 115-30).

[¶3] Reynolds removed the matter to the United States District Court for the District of Maine. *See* 28 U.S.C.S. § 1441 (LEXIS through Pub. L. No. 115-30). The District Court (*Torresen, J.*) dismissed the federal claims, and

---

[1] Desjardins also named Donald Willard, the Town Manager, as a defendant on all counts. The claims against Willard were dismissed by the United States District Court for the District of Maine, *see Desjardins v. Willard*, No. 2:13-cv-00338-NT, 2014 U.S. Dist. LEXIS 84782, at *62 (D. Me. June 20, 2014), *aff'd in part and vacated in part*, 777 F.3d 43 (1st Cir. 2015), and are not at issue in this appeal.

Desjardins agreed to the dismissal of his claims for negligent and intentional infliction of emotional distress. *Desjardins v. Willard*, No. 2:13-cv-00338-NT, 2014 U.S. Dist. LEXIS 84782, at *2-3, 61-62 (D. Me. June 20, 2014). The court also granted Reynolds's special motion to dismiss the State claims pursuant to section 556. *Id.* at *52-57, 62.

[¶4] On Desjardins's appeal, the United States Court of Appeals for the First Circuit affirmed the dismissal of Desjardins's federal claims, but vacated the dismissal of his state law claims on section 556 grounds, concluding that those "issues are better resolved by the state courts, where this case began." *Desjardins v. Willard*, 777 F.3d 43, 46 (1st Cir. 2015). Thus, when the matter was returned to the Superior Court's jurisdiction in February of 2015, only Desjardins's claims for defamation and false light invasion of privacy remained.

[¶5] Before the Superior Court, Reynolds reasserted his special motion to dismiss on anti-SLAPP grounds, with accompanying affidavits and various exhibits. Desjardins opposed the motion, submitting affidavits and exhibits of his own. By judgment dated June 29, 2015, the Superior Court (*Warren, J.*) granted Reynolds's special motion to dismiss both remaining causes of action on anti-SLAPP grounds. Desjardins appeals.

## II. DISCUSSION

[¶6]   In this matter, we are called upon to consider the reaches of Maine's anti-SLAPP statute, 14 M.R.S. § 556, which provides as follows:

### § 556. Special motion to dismiss

When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss.  The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require.  The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

The Attorney General on the Attorney General's behalf or on behalf of any government agency or subdivision to which the moving party's acts were directed may intervene to defend or otherwise support the moving party on the special motion.

All discovery proceedings are stayed upon the filing of the special motion under this section, except that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted. The stay of discovery remains in effect until notice of entry of the order ruling on the special motion.

The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper.

If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters. This section does not affect or preclude the right of the moving party to any remedy otherwise authorized by law.

As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

Thus, Maine's anti-SLAPP statute, like those of other jurisdictions, provides a procedure for the expedited dismissal of lawsuits that are brought not to redress a legitimate wrong suffered by the plaintiff, but instead solely for the purpose of dissuading a defendant from exercising his First Amendment right to petition the government or punishing him for doing so. *See Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 14, 41 A.3d 551; *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 ("The typical mischief that the

6

anti-SLAPP legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." (alteration omitted) (quotation marks omitted)), *abrogated on other grounds by Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 12 n.9, 66 A.3d 571. Such cases are filed "solely for delay and distraction, and to punish activists by imposing litigation costs on them." *Morse Bros., Inc.*, 2001 ME 70, ¶ 10, 772 A.2d 842 (quotation marks omitted). Moreover, because the SLAPP plaintiff's goal is not necessarily to win in the litigation, but, through the cost of litigation, to punish or deter petitioning activity, "defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs." *Id.* (quotation marks omitted).

[¶7] To further the goals of the statute, section 556 allows the moving party to file a special motion to dismiss that may be given priority on the docket as the interests of justice require. 14 M.R.S. § 556; *Morse Bros., Inc.*, 2001 ME 70, ¶ 10, 772 A.2d 842. In another case issued this month, *Gaudette v. Davis*, 2017 ME 86, ¶¶ 18-22, --- A.3d ---, we established some additional procedural steps for the trial court to undertake to decide special motions to dismiss filed on anti-SLAPP grounds. Notwithstanding those new procedural

elements for which *Gaudette* provides, the analysis of a special motion to dismiss in *Gaudette* begins with the same requirements as those set out in our prior anti-SLAPP decisions. *Id.* ¶¶ 16-17.

[¶8]    As we have consistently stated, section 556 imposes a burden-shifting procedure between the moving and nonmoving parties. *E.g., id.* ¶¶ 8-9; *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 8, 143 A.3d 788; *Schelling v. Lindell*, 2008 ME 59, ¶ 7, 942 A.2d 1226; *Morse Bros., Inc.*, 2001 ME 70, ¶¶ 19-20, 772 A.2d 842. First, in a motion with accompanying affidavits, the moving party (usually the defendant[2]) must demonstrate, as a matter of law, that the anti-SLAPP statute applies to the conduct that is the subject of the plaintiff's complaint by establishing that "the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226; *see Gaudette*, 2017 ME 86, ¶ 16, --- A.3d ---. If the defendant fails to meet his initial burden, the special motion to dismiss must be denied. *Gaudette*, 2017 ME 86, ¶ 16, --- A.3d ---; *Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551; *see Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226.

---

[2]  Because it is so often the case, we will use "defendant" in place of "the moving party" and "plaintiff" in place of "the nonmoving party."

8

[¶9]  If the defendant satisfies this initial burden, the burden then shifts to the nonmoving party (usually the plaintiff) to offer prima facie evidence that the defendant's exercise of his right to petition (1) was "devoid of any reasonable factual support or any arguable basis in law" and (2) caused "actual injury" to the plaintiff.  14 M.R.S. § 556; *see Gaudette*, 2017 ME 86, ¶ 17, --- A.3d ---; *Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551.  If the plaintiff fails to meet this prima facie burden for all of the petitioning activities at issue—"either by the absence of the minimum amount of evidence on either element or based on some other legal insufficiency"—the special motion must be granted and the case dismissed.  *Gaudette*, 2017 ME 86, ¶ 17, --- A.3d ---; *see Nader I*, 2012 ME 57, ¶ 37, 41 A.3d 551.

[¶10]  If the plaintiff meets his prima facie burden of establishing that any one or more of the petitioning activities at issue lacks factual or legal support and caused the plaintiff actual injury, the parties may avail themselves of an additional procedural mechanism according to the new procedure set out in *Gaudette*.  2017 ME 86, ¶¶ 18-21, --- A.3d ---.  That mechanism provides for limited discovery and an evidentiary hearing at which the plaintiff must prove that those petitioning activities for which the

prima facie burden was met are devoid of factual or legal support and caused actual injury, this time by a preponderance of the evidence. *Id.*

[¶11]  Here, there can be no legitimate argument but that Reynolds's statements to the sheriff's office regarding Desjardins's alleged history of arriving at Town meetings—and having driven his vehicle to those meetings—while under the influence of alcohol qualify as petitioning activity.[3] *See Schelling*, 2008 ME 59, ¶ 11, 942 A.2d 1226.  In addition, Reynolds has not challenged the Superior Court's conclusion that Desjardins met his prima facie burden of establishing that at least one of Reynolds's statements to the sheriff was devoid of any factual or legal support.  *See id.* ¶ 7.  Therefore, we limit our review to the issue of whether Desjardins established, on a prima facie basis, that Reynolds's petitioning actions caused Desjardins "actual injury."  *See id.*

[¶12]  The meaning of "actual injury" pursuant to section 556 is a question of law we review de novo.  *Id.* ¶ 17.  To interpret section 556 in a manner that gives effect to the Legislature's intent, we look first to the plain language of the provision.  *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104.  If that language is unambiguous, we interpret it according to its unambiguous meaning.  *Id.*  If the language of the statute is ambiguous, i.e.,

---

[3]  To the extent that Desjardins also points to Reynolds's statements to nongovernmental third parties, Desjardins did not allege any such statements as the basis of any of his claims in this matter and any such facts are therefore not before us in this appeal.

reasonably susceptible to multiple interpretations, we look beyond the plain language of the provision to consider other indicia of legislative intent, including the legislative history underlying its enactment. *Id.*

[¶13]  Unlike other terms in the statute, "actual injury" is not defined in section 556.  Indeed, although we often look to other statutory provisions for clues as to the meaning of particular phrase, section 556 marks the single occurrence of the phrase "actual injury" in the current Maine Revised Statutes.

[¶14]  We have, however, had multiple occasions to address its meaning in our prior decisions.  In those decisions, we have emphasized that "actual injury" requires a "reasonably certain monetary valuation of the injury" suffered by the plaintiff.  *Schelling*, 2008 ME 59, ¶ 17, 942 A.2d 1226; *see Nader I*, 2012 ME 57, ¶ 38, 41 A.3d 551 (explaining that "[a]ctual injury could include . . . quantifiable losses of money or other resources or identifiable special damages"); *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169 (requiring "evidence from which damage in a definite amount may be determined with reasonable certainty" (quotation marks omitted)). The requirement of reasonable certainty also precludes the establishment of "actual injury" when the plaintiff asserts only presumed damages ("damages per se"), as is associated with common law causes of action for libel or

slander.  *Schelling*, 2008 ME 59, ¶¶ 18-19, 942 A.2d 1226; *see Maietta Constr., Inc.*, 2004 ME 53, ¶ 10, 847 A.2d 1169.

[¶15]  In his opposition to Reynolds's motion to dismiss, Desjardins states that he suffered two forms of harm as a result of Reynolds's actions. First, Desjardins attested that he was stopped by the sheriff's deputy on one occasion "without cause and [was] not allowed to go about his normal activities for a time," was "humiliated and embarrassed at that time," and "suffered great emotional distress . . . when he learned that he had been red flagged [by the sheriff's office] for something that was totally contrived."  The second form of harm Desjardins suggests he suffered in his opposition to the special motion to dismiss is an expenditure of $500 he alleges he paid an attorney after he was stopped, whom he hired to investigate the source of the reports to the sheriff's office.

[¶16]  As a matter of law, these asserted harms do not rise to the level of "actual injury" required by section 556.  In the lengthy recitation of the underlying facts comprising his complaint, Desjardins briefly mentioned that he retained counsel to investigate the reports.  His complaint never purported to seek damages for that cost, however, or to otherwise suggest that his retention of counsel constituted any aspect of the damages he was seeking in

the litigation; rather, as to his defamation and false light invasion of privacy causes of action remaining before the court, Desjardins alleged only that Reynolds's statements constituted defamation per se; that he suffered "humiliation, loss of reputation and severe emotional distress" and "serious emotional distress"; and that he was entitled to punitive damages for Reynolds's actual or implied malice.

[¶17]  Our notice pleading requirements are forgiving; the plaintiff need only give "fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶¶ 16, 21, 19 A.3d 823 (citation omitted) (quotation marks omitted); *see* M.R. Civ. P. 8(a)(1).  The special motion to dismiss procedure in anti-SLAPP matters is, in contrast, a more precise mechanism.  *See Burns*, 2011 ME 61, ¶ 21, 19 A.3d 823 (noting that the notice pleading requirements do not, in any event, allow a party to "shift his cause of action at any point in the proceedings").  The purpose of section 556 is to provide for expedited consideration of the nature of a plaintiff's allegations—and a minimum amount of evidence supporting the veracity of those allegations—as early in the litigation as possible, before discovery or any other motion practice.  *See* 14 M.R.S. § 556 (requiring that "[a]ll discovery

proceedings are stayed upon the filing of the special motion under this section"); *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 18, 72 A.3d 512. In this way, a defendant burdened by a SLAPP case can seek early disposal of the litigation, before the substantial legal fees that are the true impetus behind SLAPP litigation can accrue.

[¶18] Although this process may appear abrupt, it provides protection for a citizen's fundamental right to petition the government, a right that the Legislature has given priority by enacting the anti-SLAPP statute. *See Bradbury*, 2013 ME 72, ¶¶ 9-10, 72 A.3d 512; *Morse Bros., Inc.*, 2001 ME 70, ¶ 10, 772 A.2d 842. The Legislature has chosen to protect petitioning activity by broadly defining a "party's exercise of its right of petition" and by creating a procedure for the prompt dismissal of lawsuits that challenge any actions that fall within that broad definition of petitioning activity. 14 M.R.S. § 556.

[¶19] In this context, both parties must be limited in their anti-SLAPP filings to the universe of facts as actually alleged in the plaintiff's complaint.[4] By alleging a new form of harm for the first time solely in response to the special motion to dismiss, Desjardins has attempted to thwart the purpose of the anti-SLAPP statute by expanding the scope of the litigation that Reynolds

---

[4] At no time did Desjardins seek to amend his complaint. *See* M.R. Civ. P. 15.

14

must defend against. Because Desjardins's pre-litigation investigation expenditure constitutes no part of his request for damages in his complaint, we reject that cost as an "actual injury" within the meaning of section 556 at the special motion to dismiss stage.[5] *Cf. Nader II*, 2013 ME 51, ¶ 20, 66 A.3d 571 (observing that, although the plaintiff referenced relevant evidence in his complaint, his failure to provide that evidence in his opposition to a special motion to dismiss pursuant to section 556 precluded the court from determining that the plaintiff met his prima facie burden).

[¶20] Nor did Desjardins meet his burden of establishing actual injury through his various assertions of emotional damages, although these do at least correspond with the allegations in his complaint. In *Schelling*, we held that "purely emotional injuries" could only constitute "actual injury" to the extent that those emotional damages were otherwise compensable pursuant to existing statutory or common law. 2008 ME 59, ¶ 20, 942 A.2d 1226. Because the common law provides that "emotional distress alone is not compensable unless it is 'so severe that no reasonable person could be expected to endure it,'" "actual injury" based on emotional distress pursuant

---

[5] Because we conclude that Desjardins's failure to conform his special motion to dismiss opposition to the allegations pleaded in his complaint prevents him from meeting his burden, we need not consider whether such self-generated damages otherwise can satisfy the "actual injury" component of an anti-SLAPP opposition. 14 M.R.S. § 556 (2016).

to section 556 cannot be established by anything less as a matter of law. *Id.* ¶ 25 (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18). Thus, "loss of sleep, mental suffering, . . . embarrassment, . . . [d]istress, irritation, and emotional upset" are not "legally sufficient" to constitute "actual injury," nor are "minor emotional injuries, such as hurt feelings." *Id.* ¶¶ 18, 25-26.

[¶21] Consistent with these decisions, Desjardins suffered no "actual injury" by the inconvenience of being the subject of a routine traffic stop, nor do his filings contain any evidence that the emotional distress he has suffered is "so severe that no reasonable person could be expected to endure it." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18 (alteration omitted) (quotation marks omitted); *see, e.g.*, *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶¶ 4-8, 26, 48 A.3d 774 (concluding that the emotional harm suffered by property owners whose property was inadvertently secured in foreclosure did not amount to compensable emotional distress damages); *Lyman v. Huber*, 2010 ME 139, ¶¶ 23-26, 10 A.3d 707 (discussing that emotional distress that meets this standard is often characterized by "objective symptoms demonstrating shock, illness, or other bodily harm," and concluding that the emotional harm suffered by a woman during a fifteen-year emotionally abusive marriage was not so severe that a reasonable person could not be

expected to endure it). In the absence of any showing of such "actual injury," Desjardins failed, as a matter of law, to meet his prima facie burden in opposing Reynolds's special motion to dismiss pursuant to section 556, and the Superior Court correctly dismissed the remaining claims. Moreover, because we conclude that Desjardins did not meet his prima facie burden as a matter of law according to the standard first articulated in *Nader I* and reiterated in *Gaudette*, we need not remand the matter for the Superior Court to apply the additional procedures articulated in *Gaudette*, which apply only if a plaintiff has met his prima facie burden. *See Gaudette*, 2017 ME 86, ¶ 17, --- A.3d ---; *Nader I*, 2012 ME 57, ¶¶ 16, 29-38, 41 A.3d 551.

The entry is:

> Judgment affirmed.

_____

JABAR, J., dissenting.

[¶22] I respectfully dissent for two reasons. First, the Court's decision overstates the protection afforded to petitioning activity. The decision prevents what would otherwise be a meritorious case of defamation from proceeding in our courts. The Court states that Maine's anti-SLAPP statute, 14 M.R.S. § 556 (2016), "create[s] a procedure for the prompt dismissal of

lawsuits that challenge *any actions* that fall within that broad definition of petitioning activity." Court's Opinion ¶ 18 (emphasis added). This is not accurate; the statute was intended to protect petitioning activity from nonmeritorious lawsuits—not from meritorious lawsuits. A person engaged in petitioning activity is not immune from a meritorious defamation action.

[¶23] Second, we should broaden the definition of "actual injury" to include nonmonetary or non-out-of-pocket damages traditionally allowed in defamation cases.

## I. MERITORIOUS CASES

[¶24] Our decisions have historically and consistently stated that the purpose of Maine's anti-SLAPP statute is to protect against meritless lawsuits filed with the purpose of discouraging participation in activities protected by the First Amendment, such as the right to petition the government. *See Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 15, 772 A.2d 842 (stating that the special motion to dismiss "is a statutory creature designed to protect certain defendants from meritless litigation"). The critical descriptive term— "meritless"—or some synonym—e.g., "baseless"—appears in nearly every decision in which we have addressed the statute.[6] The fact that anti-SLAPP

---

[6] *See Bradbury v. City of Eastport*, 2013 ME 72, ¶ 9, 72 A.3d 512 ("The purpose of the anti-SLAPP statute and the special motion to dismiss is to provide a 'procedural mechanism to dispose of

18

statutes protect only against meritless or frivolous lawsuits is well established in scholarly writing.[7]  As the Court notes in its decision, "because the SLAPP plaintiff's goal is not necessarily to win in the litigation, but, through the cost of litigation, to punish or deter petitioning activity, 'defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs.'" Court's Opinion ¶ 6 (quoting *Morse Bros., Inc.*, 2001 ME 70, ¶ 10, 772 A.2d 842).  As we noted in *Maietta Construction, Inc. v. Wainwright*, "the anti-SLAPP

baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the government . . . ." (quotation marks omitted)); *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 22, 41 A.3d 551 ("Despite the apparent purpose of the anti-SLAPP statute to dispose expeditiously of meritless lawsuits that may chill petitioning activity, the statutory language fails to track and implement such an objective.  By protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning." (quotation marks omitted)); *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226 ("Title 14 M.R.S. § 556, known as Maine's anti-SLAPP statute . . . , is designed to guard against meritless lawsuits brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs."); *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 (stating that the anti-SLAPP statute is designed to protect against meritless lawsuits filed to dissuade or punish a party's exercise of its constitutional rights by imposing on it the delays and costs associated with litigation).

    [7]  *See* Steven J. Andre, *Anti-SLAPP Confabulation and the Government Speech Doctrine*, 44 Golden Gate U. L. Rev. 117, 119 (2014) ("The hallmark of a SLAPP suit is its lack of merit.  Defendants prevail on the merits in over 77% of SLAPP suits.  A SLAPP is brought with goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation, to weaken that defendant's ability to engage in petitioning activity undesirable to the plaintiff, and to deter future activity." (footnotes omitted) (quotation marks omitted)); John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPS*, 26 Loy. L.A. L. Rev. 395, 399 (1993) ("SLAPPs are by definition meritless suits."); Leah McGowan Kelly, *Election SLAPPS: Effective at Suppressing Political Participation and Giving Anti-SLAPP Statutes the Slip*, 66 Me. L. Rev. 191, 192 (2013).

statute is aimed at preventing litigation that has no chance of succeeding on the merits." 2004 ME 53, ¶ 12, 847 A.2d 1169.

[¶25] Maine's anti-SLAPP statute, like anti-SLAPP statutes from other states, has a single objective: to force lawsuits that are brought as a result of petitioning activity to face judicial scrutiny before discovery and litigation costs are incurred by the responding party. As the Court notes in its decision,

> [t]he purpose of section 556 is to provide for expedited consideration of the nature of a plaintiff's allegations—and a minimum amount of evidence supporting the veracity of those allegations—as early in the litigation as possible, before discovery or any other motion practice. In this way, a defendant burdened by a SLAPP case can seek early disposal of the litigation, before the substantial legal fees that are the true impetus behind SLAPP litigation can accrue.

Court's Opinion ¶ 17 (citations omitted).

[¶26] The Court's announcement today that Maine's anti-SLAPP statute bars a claim for defamation that the plaintiff would otherwise be entitled to pursue creates a pervasive immunity—in derogation of common law rights— for all activity undertaken within the broad category of petitioning activity. It marks an extraordinary departure from well-established jurisprudence construing the operation of section 556.

[¶27] If the Legislature had intended section 556 to establish such a wide-ranging immunity, the statute would simply provide that a defendant

need only demonstrate that the actions cited in the complaint consisted of valid petitioning activities and that upon such demonstration the lawsuit must be dismissed. Instead, section 556 requires a showing of valid petitioning activity as the first step in the process. The second step—a showing that the defendant's acts were "devoid of any reasonable factual support or any arguable basis in law" and "caused actual injury"—is directed to the plaintiff's complaint.[8] If the Legislature intended to create a presumptive, pervasive immunity based simply upon petitioning, as the Court posits, no subsequent steps beyond the first would be required.

## II. ACTUAL INJURY

[¶28] In addition to overstating the protection afforded by Maine's anti-SLAPP statute to any action, the Court's definition of "actual injury" is too narrow. Although our jurisprudence has limited the definition of "actual injury" to out-of-pocket damages, *see Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶¶ 12-14, 143 A.3d 788 (citing *Schelling v. Lindell*, 2008 ME 59, ¶ 17, 942 A.2d 1226), it is time to revisit and overrule those cases, because this narrow definition of "actual injury" prevents what would otherwise be a

---

[8] I agree with the Court that "Reynolds has not challenged the Superior Court's conclusion that Desjardins met his prima facie burden of establishing that at least one of Desjardins's statements to the sheriff was devoid of any factual or legal support." Court's Opinion ¶ 11. My disagreement with the Court's decision is limited to the scope of the anti-SLAPP statute and the meaning of "actual injury" as that term of art is used in it.

meritorious defamation case from proceeding in our courts. The common law of defamation allows for the recovery of damages without evidence of out-of-pocket expenses. In *Gertz v. Robert Welch, Inc.*, the United States Supreme Court said:

> We need not define 'actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

418 U.S. 323, 349-50 (1974). We have enunciated similar rules regarding injuries in defamation cases. *See Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18 ("We have long allowed recovery for mental anguish and loss of enjoyment of life in most tort actions." (quotation marks omitted)); *Rippett v. Bemis*, 672 A.2d 82, 88 (Me. 1996) (stating that defamation damages "may include the elements of mental suffering, humiliation, embarrassment, effect on reputation and loss of social standing so far as they have been proved and may reasonably be presumed"); *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me. 1985).

[¶29] Requiring a litigant to prove out-of-pocket expenses to establish "actual injury" in a defamation case is in derogation of our common law. The

enactment of a statute in derogation of common law is a profoundly significant step and we must not presume that the Legislature has done so in the absence of a very clear statement of its intention to change existing common law. We reiterated our longstanding adherence to this rule in *Batchelder v. Realty Resources Hospitality, LLC.*, where we explained that

> we have long embraced the well-established rule of statutory construction that the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or necessary implication.

2007 ME 17, ¶ 23, 914 A.2d 1116 (quotation marks omitted).

[¶30] Among the authorities cited for our statement in *Batchelder* was *Maietta Construction, Inc.*, which confirmed the proposition that "[g]enerally, Legislatures are deemed to draft legislation against the backdrop of the common law, and *do not displace it without directly addressing the issue.*" 2004 ME 53, ¶ 10, 847 A.2d 1169 (emphasis added). We also cited *Ziegler v. American Maize-Products Co.*, where we noted that a "legislative pronouncement embodied in [a statute] alters common law only to the extent that the Legislature has made that purpose clear." 658 A.2d 219, 223

(Me. 1995). By contrast, neither the legislative history[9] nor the plain language of section 556 evidence an intention to deprive Maine citizens of meritorious common law causes of action simply because the wrongdoer committed the wrong in the context of petitioning government. We have never so held in any of our cases construing section 556. For these reasons, we should broaden the definition of "actual injury" to its traditional definition as existing in our jurisprudence. Absent the Legislature's clear intent to change the common law regarding damages in defamation cases, interpreting "actual injury" consistently with our previous anti-SLAPP cases denies Maine's litigants access to the courts for what would otherwise be meritorious cases. By interpreting section 556 to require proof of a quantifiable sum of out-of-pocket damages, the Court has abrogated Maine's common law definition of "injury" in defamation cases.

[¶31] Therefore, we must define "actual injury" as we have traditionally defined actual injury in defamation cases by not limiting the definition to out-of-pocket expenses. Because Desjardin established a prima facie case of emotional injury, which would be recoverable in a defamation claim as an

---

[9] We have in the past recognized that the limited legislative history of section 556 constrains our interpretation of the statute. *See Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 14, 103 A.3d 547 (noting that unlike other states' anti-SLAPP statutes, "there is limited legislative history to shed light on the question of its scope").

24

"actual injury" without proof of out-of-pocket expenses, I would vacate the trial court's grant of Reynolds's special motion to dismiss and remand the case to Superior Court. Because I do not agree with the Court's new evidentiary procedure, *see Gaudette v. Davis*, 2017 ME 86, ¶¶ 26, 34, 42-45, --- A.3d --- (Jabar, J., dissenting), judgment should be entered against Reynolds on his special motion to dismiss and the case should be remanded to the Superior Court to proceed in the normal course.

---

John S. Campbell, Esq. (orally), Campbell & Associates, P.A., Portland, for appellant Dana Desjardins

Daniel J. Murphy, Esq. (orally), Bernstein Shur, Portland, for appellee Michael Reynolds

Cumberland County Superior Court docket number CV-2013-369
FOR CLERK REFERENCE ONLY