PETER BRIOLA

*vs.*

J. P. BASS PUBLISHING CO., FRANK J. BASS
AND DELMONT T. DUNBAR.

Hancock.    Opinion, March 25, 1942.

*Peter Briola,* Ellsworth, and

*Blaisdell & Blaisdell,* Ellsworth, for the plaintiff.

*Fellows & Fellows,* Bangor, for the defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

THAXTER, J.    The plaintiff, an attorney at law, has brought an action for libel against the J. P. Bass Publishing Co., the

owner and publisher of the Bangor Daily Commercial, against Frank L. Bass, the managing editor, and against Delmont T. Dunbar, a reporter of the newspaper, who wrote the article which the plaintiff claims is libelous. The declaration is composed of four counts in two of which the whole article is set forth, in the others only those parts which are regarded as essential. One count in each class relates to the injury alleged to have been done to the plaintiff as an individual, the others to the injury done to him as an attorney and counselor at law. The allegations in each count setting forth the alleged libelous matter are in substance the same.

The article which has given offense to the plaintiff related to his testimony in a case pending in the Superior Court which was heard by referees at Auburn. The essential part of the alleged libelous matter is set forth in the plaintiff's declaration as follows:

"Evidence closed on the direct testimony of Peter Briola, Ellsworth Attorney, in the $10,000 suit of Brann and Isaacson of Lewiston against the City of Ellsworth for alleged breach of contract, with Mr. Briola depositing the parentage of the child nobody cares to claim,—the idea to hire Brann and Isaacson—squarely in the lap of the absent councillor, Myron R. Carlisle. This came in the nature of surprise testimony, for Mr. Briola had previously stated in public and in the presence of this writer that councillor C. M. Gott made the motion at that now famous meeting. 'Who made the motion to hire Brann and Isaacson' asked Mr. Isaacson, acting for the firm of which he is a member? 'Myron R. Carlisle,' replied Mr. Briola, never raising his eyes from the floor.' (meaning the plaintiff had falsified in court and thereby committed the crime of perjury)—in the report of Attorney Isaacson's allegations, in his opening, the report in part is as follows, to wit: 'Ellsworth finding itself faced with the probability of exceeding its debt limit, if indeed it had

not already done so, he stated, approached his firm through the City Solicitor, Peter Briola with the idea that they use their influence and experience through previous dealings with the RFC, to have the amount of the mortgage materially reduced,—to be specific by $55,000 (Mr. Briola said $60,000)' (meaning to convey the impression by said parenthesis that the plaintiff had falisfied in court)."

To each count of the declaration, a special demurrer was filed. To the ruling of the presiding justice sustaining these demurrers, the plaintiff filed exceptions which are now before us.

In so far as we regard the special grounds for the demurrers as of importance, they set forth that the article does not contain anything defamatory to the plaintiff; that the language used is not libelous and does not bear the interpretation placed on it by the plaintiff; that it does not import a charge of moral turpitude nor tend to expose the plaintiff to public hatred, contempt, or ridicule, or deprive him of the benefit of public confidence and intercourse; that it does not tend to degrade the plaintiff or to indicate that he will suffer loss in his character, property, business or profession; that no special damage is alleged; and that the words do not import a criminal charge or one of moral turpitude.

There is one matter to be disposed of at the outset. The defendants claim that the bill of exceptions is not in proper form and does not set forth the issue to be decided by this court. We do not understand on what ground this contention is based. The ruling sets out the plaintiff's declaration and the demurrers, the ruling of the presiding justice in sustaining the demurrers, and the claim that the plaintiff was aggrieved thereby. We do not see what more is necessary to present to this court a clean-cut issue of law.

It is too well settled to require extended citation of authority that there is a distinction in the requirements necessary to maintain an action of libel and in those essential in an action

of slander. A charge which is published in writing is regarded as carrying more weight than one which is made verbally. It is accordingly not necessary in a case of libel that the charge import a crime, nor is it essential that special damage be alleged. The question is, do the printed words, if believed, "naturally tend to expose the plaintiff to public hatred, contempt or ridicule, or deprive him of the benefit of public confidence and social intercourse?" *Tillson* v. *Robbins*, 68 Me., 295, 301, 28 Am. Rep., 50.

The issue raised by the demurrers is one of law; and we cannot hold as a matter of law that the language contained in the article in question does not render the defendants liable in damages.

The case of *Bearce* v. *Bass*, 88 Me., 521, 34 A., 411, 51 Am. St. Rep., 446, is clearly distinguishable. The question there was whether the language complained of was fair and reasonable criticism of work done by the plaintiff in the construction of a public building. In holding that it was nothing more than fair comment and hence privileged, the court makes this significant distinction, page 542: "But, when the comment or criticism of the man's work becomes an attack on his private or business character, then the element of malice comes in and stamps the language as libelous."

The plaintiff in his innuendo claims that the language used charges him with perjury. If, however, it should be found that the words are libelous on their face, even though they do not go so far as to impute a crime, the innuendo may be regarded as surplusage. 13 Enc. of Pleading & Practice, 56; 33 Am. Jur., 221.

*Exceptions sustained.*