2008 ME 59

**Joyce SCHELLING**

v.

**R. Kenneth LINDELL Jr.**

Supreme Judicial Court of Maine.

Argued: Oct. 25, 2007.
Decided: March 20, 2008.

John M.R. Patterson, Esq., John G. Osborn, Esq. (orally), Bernstein Shur, Portland, for R. Kenneth Lindell, Jr.

George C. Schelling, Esq., Joseph M. Bethony, Esq. (orally), Gross, Minsky & Mogul, P.A., Bangor, for Joyce Schelling.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] This case invites us to address Maine's anti-SLAPP[1] statute, 14 M.R.S. § 556 (2007), in the context of political, and possibly defamatory, speech contained in a Legislator's letter to the editor. In doing so, we conclude that the suit against the defendant cannot proceed.

[¶ 2] R. Kenneth Lindell appeals from an order denying his special motion to dismiss filed pursuant to 14 M.R.S. § 556, Maine's anti-SLAPP statute, entered in the Superior Court (Hancock County, Mead, J.). Lindell argues that, although the court correctly determined that the statute was applicable to the case, it incorrectly failed to dismiss the defamation suit brought against him because it incorrectly determined that the assertions made in a letter Lindell submitted to the Belfast Republican Journal were without any rational basis in fact or arguable basis in law, and that the plaintiff, Joyce Schelling, had demonstrated actual injury as a result of Lindell's conduct. Schelling cross-appeals from that portion of the court's order holding that the anti-SLAPP statute was applicable to this case. We conclude that the anti-SLAPP statute does apply to the facts before us, and, because Schelling failed to produce prima facie evidence of actual injury, we determine that the court erred in denying Lindell's special motion to dismiss. Accordingly, we vacate the judgment and direct the Superior Court to grant Lindell's special motion to dismiss.

## I. BACKGROUND

[¶ 3] This case began as a political debate in the pages of the Belfast Republican Journal. In April 2006, Joyce Schelling wrote a letter to the editor of that publication expressing support for a recently enacted law, L.D. 1769, "An Act to Strengthen Maine's Purchasing Code of Conduct." In that letter, Schelling criticized R. Kenneth Lindell, then a member of the Maine House of Representatives, for opposing the bill. Lindell responded to that letter by submitting one of his own for publication, also to the Belfast Republican Journal, which expressed the reasoning behind his vote and suggested that Schelling had supported the bill, at least in part, because: (1) she had a relationship to a company known as Recycled Office Products; (2) that company would benefit in some way from the passage of the bill; and (3) Schelling had used her "political clout" as a "prominent member of ... the Natural Resources Council of Maine" (NRCM) to obtain benefits for her business. The full text of Lindell's letter, as printed, reads as follows:

I want to thank Joyce Schelling for making an issue of my vote against LD 1769, An Act to Strengthen the State Purchasing Code of Conduct Laws. Like many bills that come before the Legislature, LD 1769 was designed to line the pockets of special interest groups who seek to financially gain at the expense of Maine's overburdened taxpayers.

The bill as presented had nothing to do with sweatshops, although that was its ostensible purpose. It was about granting government procurement contracts to politically connected businesses like Recycled Office Products, controlled by Ms. Schelling.

---

1. Strategic Lawsuit Against Public Partic- ipation

I applaud entrepreneurs like Ms. Schelling for the risk they take in starting a business from the ground up. I have done the very same thing myself. I also applaud her for promoting local and environmentally sound products.

Where I draw the line is when she seeks to use her political clout as a prominent member of the most powerful environmental lobbying group in Maine—the Natural Resources Council of Maine—to garner special status for her own business by imposing mandates on our government procurement programs.

R. Kenneth Lindell

[¶ 4] Lindell asserts that before writing the letter, he performed some background research on Schelling. According to his research, Schelling had described herself in written legislative testimony as "a distributor of 100% post-consumer, processed chlorine free paper" and as a "member of Maine Businesses for Social Responsibility." Lindell also found a Recycled Office Products newsletter, a government purchasing project website, and an NRCM website all identifying Schelling as the contact person for Recycled Office Products. Lindell's research also showed that Recycled Office Products provides NRCM with office supplies, and that NRCM recommends that others also use Recycled Office Products for their paper needs. Additionally, Lindell found a photograph of Schelling with NRCM's Board President and Executive Director.

[¶ 5] Following the publication of Lindell's letter, Schelling filed suit for defamation. Schelling claims that she suffered loss of sleep, loss of concentration, embarrassment, and anxiety as a result of Lindell's statements. Lindell filed a special motion to dismiss the litigation pursuant to Maine's anti-SLAPP statute. The Superior Court applied the anti-SLAPP statute to the facts of the dispute but denied Lindell's special motion to dismiss concluding that Schelling had shown that Lindell's statements were without any reasonable factual support and that Schelling had suffered actual injury as a result of Lindell's statements. The present appeal and cross-appeal followed.

## II. DISCUSSION

### A. Application of 14 M.R.S. § 556

[¶ 6] Title 14 M.R.S. § 556, known as Maine's anti-SLAPP statute (Strategic Lawsuit Against Public Participation), is designed to guard against meritless lawsuits brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs. *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846. The anti-SLAPP statute provides defendants who are the targets of such suits with a "special motion to dismiss," a statutory motion designed to minimize the litigation costs associated with the defense of such meritless suits. *Id.* ¶ 15, 772 A.2d at 848.

[¶ 7] To prevail on a special motion to dismiss, the defendant carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government. 14 M.R.S. § 556. Once the defendant demonstrates that this is the basis for the suit, and therefore that the statute applies, the burden falls on the plaintiff to demonstrate that the defendant's activity (1) was without "reasonable factual support," (2) was without an "arguable basis in law," and (3) resulted in "actual injury" to the plaintiff. *Id.*

[¶ 8] We allow interlocutory appeals from denials of special motions to dismiss

brought pursuant to the anti-SLAPP statute because a failure to grant review of these decisions at this stage would impose additional litigation costs on defendants, the very harm the statute seeks to avoid, and would result in a loss of defendants' substantial rights. *Morse Bros.*, 2001 ME 70, ¶ 15, 772 A.2d at 848.

[¶ 9] Therefore, the questions before us are: (A) whether the anti-SLAPP statute applies to Lindell's conduct, and (B) if so, whether Schelling successfully made the showing required by the statute to defeat Lindell's motion to dismiss.

A. Application of the Anti–SLAPP Statute

 [¶ 10] On the applicability of the anti-SLAPP statute to Lindell's actions, Schelling urges us to conclude that because L.D. 1769, the underlying topic of Lindell's letter, had already been passed by the Legislature, Lindell's comments could not have been intended to influence an ongoing public debate, and therefore were not an exercise of his right to petition the government. Schelling also argues that application of the statute to the facts of this case would not serve the purpose of the statute, which is to protect the exercise of First Amendment rights from nonmeritorious lawsuits designed to discourage their exercise.

[¶ 11] Maine's anti-SLAPP statute very broadly defines the exercise of the "right to petition." The statute includes within the definition of petitioning activity:

- Any statement to a legislative, executive or judicial body;
- Any statement made in connection with an issue under consideration or review by a governmental entity;
- Any statement likely to encourage consideration or review of an issue by a governmental entity;
- Any statement likely to enlist public participation in encouraging a government body to consider a particular issue; and
- Any other statement falling within constitutional protection of the right to petition the government.

14 M.R.S. § 556.[2]

[¶ 12] As is clear from the language of section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute. Recently, we recognized that broad construction when we construed the meaning of petitioning activity liberally to hold that it was broad enough to encompass a citizen's published communications to newspapers aimed at influencing the outcome of a contractual dispute between the City of South Portland and a contractor. *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169, 1173.

 [¶ 13] Lindell's letter to the editor, arguably intended to effect reconsideration of purchasing requirements by the Legislature, and to enlist public support to that end, is closely analogous to the state-

---

**2.** The exact language of 14 M.R.S. § 556 (2007) provides in part:

 As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

ments made to the newspaper in *Maietta*. Construed broadly, a statute that protects "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; [or] any statement reasonably likely to enlist public participation in an effort to effect such consideration," 14 M.R.S. § 556, includes a letter, written to a newspaper, that is designed to expand the public consideration of a controversial issue recently considered by the Legislature.

■ [¶ 14] Furthermore, we cannot credit Schelling's specific argument that, because L.D. 1769 had already become law, there was no possibility that it could be the subject of petitioning activity by Lindell. When the words of a statute are unambiguous, we construe them to convey their plain and ordinary meaning. *Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 11, 745 A.2d 378, 384. Pursuant to this rule of statutory construction, the statute's definition of the right to petition the government cannot be limited to speech concerning issues currently awaiting specific action before a public body as Schelling's argument would require. The language is plainly meant to extend to statements that may have the effect of bringing an issue not currently under consideration into consideration or review by any governmental body. *See* 14 M.R.S. § 556. The definition of the right to petition the government provided by the statute is unquestionably broad enough to encompass activities related to matters not currently pending before a legislative body. *See id.*

[¶ 15] Accordingly, we reject Schelling's argument that the anti-SLAPP statute should not be applied to her suit.

**B. Showings Required by the Statute**

[¶ 16] Because the statute applies, dismissal is mandated unless the plaintiff shows that she suffered actual injury and that the defendant acted without any reasonable factual support or arguable basis in law.[3]

■ [¶ 17] We first address Schelling's claim of actual injury. Like other matters of statutory interpretation, the meaning of the phrase "actual injury" as used in 14 M.R.S. § 556 is a question of law entitled to de novo review. *City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180. We have interpreted the statutory requirement that the nonmoving party must demonstrate "actual injury" to mean that "the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty." *Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 9, 10, 847 A.2d at 1173–1174 (quoting *Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1140 (Me. 1978)). We have further explained that "actual injury" means that the facts in the record must allow the amount of damages to be determined with "reasonable, as distinguished from mathematical certainty," and have expressly stated that the amount cannot be left to "mere guess or conjecture." *Dairy Farm Leasing Co.*, 395 A.2d at 1140. Accordingly, the party opposing the special motion to dismiss must show a reasonably certain monetary valuation of the injury she has suffered. *Maietta*

---

**3.** 14 M.R.S. § 556 provides in part:

The court shall grant the special motion, unless the party against whom the special motion is made shows [1] that the moving party's exercise of its right of petition was devoid of [a] any reasonable factual support or [b] any arguable basis in law and [2] that the moving party's acts caused actual injury to the responding party.

*Constr., Inc.,* 2004 ME 53, ¶¶ 9, 10, 847 A.2d at 1173–1174.

[¶ 18] Although we do not interpret the statutory requirement of actual injury to require that a plaintiff provide an actuarial analysis of her damages, we agree with Lindell that Schelling's claimed loss of sleep, mental suffering, and embarrassment are not legally sufficient to meet the actual injury requirement imposed by the anti-SLAPP statute. *See id.* Contrary to Schelling's argument, the statutory requirement that a plaintiff must demonstrate actual injury is not satisfied by the common law rule in libel cases that a plaintiff is not required to demonstrate that she has suffered any specific damages in order to recover on her claim. *See* RESTATEMENT (SECOND) OF TORTS § 569 cmt. b (1977). Neither is the actual injury requirement satisfied by the common law rule that in slander cases, a plaintiff need not demonstrate any specific damages if the alleged defamation relates to her trade or business. *See Marston v. Newavom,* 629 A.2d 587, 592 (Me.1993).[4]

[¶ 19] This is not the first occasion on which we have explicitly held that the presumed "damages per se" traditionally associated with libel or slander relating to one's trade or business do not satisfy the actual injury requirement of the statute. *See, e.g., Maietta Constr., Inc.,* 2004 ME 53, ¶¶ 9, 10, 847 A.2d at 1173–1174. Nonetheless, Schelling urged the motion court to rely on the concept of "damages per se" associated with slander related to one's trade or business, noting, a false accusation of dishonesty in one's business dealings carries with it a component of presumptive damages. *Id.* To the con-

trary, however, "damages per se" are not sufficient to constitute the "actual injury" required by the anti-SLAPP statute. *Id.* Therefore, to the extent that the court relied on the existence of these "per se" damages in its order to support its conclusion that Schelling had demonstrated actual injury, it erred as a matter of law.

[¶ 20] Because neither of the common law doctrines that allow for the presumption of damages satisfies the anti-SLAPP's actual injury requirement, and because Shelling has alleged purely emotional injuries, she was required to demonstrate the kind of emotional damages that are compensable in Maine in order to satisfy the statute.

[¶ 21] To clarify the nature of the injury Schelling would be required to show in order to give rise to compensable damages for purely emotional or psychic harm under the anti-SLAPP statute, we briefly review the development of the compensability of emotional damages.

[¶ 22] There was a time when purely emotional injury was not compensable in Maine unless the plaintiff had also suffered some physical harm or contact as a result of the tortfeasor's conduct. *See Herrick v. Evening Express Publ'g Co.,* 120 Me. 138, 113 A. 16 (1921). Over the past thirty years however, we have moved away significantly from this strict common law limitation. We began the modernization of emotional damage compensability in Maine with our decision in *Wallace v. Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117 (Me. 1970). In that case, we held that purely emotional or psychic suffering, if both "severe" and manifested by some "objective symptomatology" (such as nausea) could

---

4. This matter involves a writing and is therefore a claim of libel. *See Briola v. J.P. Bass Pub. Co.,* 138 Me. 344, 346–47, 25 A.2d 489, 490 (1942). Because the parties and motion court have also discussed claims of slander, we also note that the common law doctrine of damages per se applicable to that variety of defamation is also insufficient to satisfy the anti-SLAPP statute's actual injury requirement.

be compensable. *Id.* at 121. At that time, we concluded that the demonstration of objective symptomatology associated with the plaintiff's emotional distress was a necessary bulwark against a deluge of fraudulent and spurious claims of emotional injury. *Id.*

[¶ 23] Twelve years after our decision in *Wallace,* we had yet another opportunity to consider under what circumstances purely emotional harms would be compensable. In *Culbert v. Sampson's Supermarkets Inc.,* we dispensed with the *Wallace* requirement that serious emotional distress be accompanied by objective symptomatology to be compensable. 444 A.2d 433 (Me.1982). We concluded that the requirement had not served its intended function of screening out fraudulent claims of emotional harm. *Id.* at 437. Instead, requiring objective symptomatology had the undesirable and unintended effect of making relatively trivial mental distress claims compensable if accompanied by physical symptoms, while arbitrarily rendering serious emotional distress noncompensable if it lacked those physical symptoms. *Id.*

[¶ 24] The rule that emerged from *Culbert* was a simple one that allowed compensation for emotional harm that was "serious" provided that all other elements of the tort claim were satisfied. *Id.* We held that "serious mental distress" existed "where a reasonable person[,] normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Id.* (quotation marks omitted).

[¶ 25] Following the *Culbert* decision, the rule regarding the types of emotional injuries compensable in Maine

has remained substantially the same. Since that time, we have clarified the foundational aspects of compensable emotional harm by explicitly concluding that minor emotional injuries, such as hurt feelings, are not compensable. *Gammon v. Osteopathic Hosp. of Me., Inc.,* 534 A.2d 1282, 1285 (Me.1987). In other words, we have made it clear there is no recognition of damage to an "eggshell psyche" in Maine. *Id.* Most recently, in *Curtis v. Porter,* we reiterated that emotional distress alone is not compensable unless it is "so severe that no reasonable person could be expected to endure it." 2001 ME 158, ¶ 10, 784 A.2d 18, 23 (citation omitted).

[¶ 26] The kind of ordinary emotional distress that Schelling claims to have suffered simply is not the sort of emotional injury that we have recognized as being compensable. Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable. Distress, irritation, and emotional upset may, in fact, be a regular result of public pronouncements, particularly in the rough and tumble of words related to governing and politics. Such distress, however, will rarely constitute the kinds of damages that are "so severe" that a reasonable person could not be expected to carry on.

[¶ 27] Because the common law doctrines associated with libel and slander are not available when the anti-SLAPP statute applies, Schelling could only meet the actual injury requirement by showing the kinds of damages required in this state to recover for purely emotional harms. She failed to demonstrate actual injury, and thus she did not meet the statutory requirements for avoiding the mandatory dismissal of her suit.[5] Accordingly, the

---

5. Because Lindell is correct that Schelling did not demonstrate that she had suffered actual injury as a result of the publication of his

letter, we have no need to consider whether the court incorrectly determined that his statements were without a reasonable factual

court erred in denying the special motion to dismiss, and we must vacate the judgment.

The entry is:

Judgment vacated. Remanded to the Superior Court for the entry of an order granting Lindell's special motion to dismiss.

basis, or whether the court improperly failed to determine whether the statements were supported by an arguable basis in law. *See* 14 M.R.S. § 556.