STATE OF MAINE                          SUPERIOR COURT
SAGADAHOC, SS.                          CIVIL ACTION
                                        DOCKET NO.: CV-2018-34


DAVID NERY, individually and on behalf of  )
ANDREW NERY, AVA NERY,                     )
ELEANOR NERY, and WILLIAM NERY             )
                                           )
            Plaintiffs,                    )
                                           )
                                           )
                                           )
        v.                                 )          **JUDGMENT**
                                           )
                                           )
BRIDGET MILLER and RANDALL MILLER          )
                                           )
            Defendants.                    )


This matter is before the court on the Defendants' Special Motions to Dismiss brought pursuant to 14 M.R.S. § 556.

## BACKGROUND

There is a long history of discord between the parties in this case, as evidenced by the many associated family matter orders. Plaintiff, David Nery ("David") is the father of minor children Andrew, Ava, Eleanor, and William. Defendant Bridget Miller ("Bridget") is the children's mother. David and Bridget were divorced in November 2014. Bridget remarried to Defendant Randall Miller ("Randy") in September 2015. Amidst the ongoing family matters, on August 28, 2018, David filed a ten-count Verified Complaint: "an action for legal relief from, and recompense for, a malicious scheme to destroy [his] constitutionally-protected, fundamental interest in the nurture, upbringing, companionship, and custody of his children." The ten counts are:

1.   Abuse of Process
2.   Fraud
3.   Defamation
4.   False Imprisonment

1

5.   Invasion of Privacy
6.   Intentional Infliction of Emotional Distress
7.   Violation of Civil/Constitutional Rights
8.   Negligence
9.   Negligent Infliction of Emotional Distress
10.  Civil Conspiracy.

All the claims are asserted against both Bridget and Randy, except for negligence and negligent infliction of emotional distress, which are asserted against Bridget only.

Defendants are separately represented and each filed a Special Motion to Dismiss on November 30, 2018 pursuant to 14 M.R.S. § 556, the anti-Strategic Lawsuit Against Public Participation (SLAPP) statute. Both motions are supported by affidavits and exhibits. David opposed both motions on December 26, 2018. The facts that are relevant to these Special Motions to Dismiss are addressed in greater detail later in this Judgment, but generally include the Defendants' phone calls to law enforcement, Bridget's conversation with a doctor, and Bridget's communications with the children's school.

## DISCUSSION

SLAPP litigation is generally without merit and filed to dissuade or punish the exercise of a defendant's First Amendment Rights. *Morse Bros. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842. Delay, distraction, punishment, or the defendant's financial burden in defending the suit are the plaintiff's primary goals in a SLAPP case. *Gaudette v. Davis*, 2017 ME 86, ¶ 4, 160 A.3d 1190, 160 A.3d 1190; *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d 842.

To deter this behavior, in 1995, the Maine Legislature enacted 14 M.R.S. § 556, the anti-SLAPP statute. The statute permits the filing of a special motion to dismiss when a moving party asserts that the civil claims against her are based on her right of petition under either the state or federal Constitution. § 556. The special motion to dismiss is designed to "minimize the litigation costs associated with the defense of such meritless

2

suits." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226. Section 556 is employed in more than just run of the mill zoning dispute cases. "Recent precedent suggests that an anti-SLAPP motion is appropriate when the plaintiff's lawsuit or claim is a retaliatory effort based solely on the moving party's petitioning conduct." *Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 13, 103 A.3d 547. "Accordingly, SLAPP lawsuits have most often taken the form of ordinary tort claims, including defamation, business torts, conspiracy, constitutional-civil rights violations, and nuisance claims." *Id.* n.6.

The statute contemplates a burden shifting framework that allows the court to expedite the process of dismissing a meritless case and mandates that the court grant the special motion unless the plaintiff meets his burden on certain issues. § 556. Over the years, caselaw has refined this burden shifting framework in an attempt to balance the plaintiff's right of access to the court to seek redress for the very same actions that the defendant declares is an exercise of her First Amendment right. *Gaudette*, 2017 ME 86, ¶ 6, 160 A.3d 1190.

## I.   The Anti-SLAPP Burden Shifting Framework.

*Gaudette* provides the trial court with a three-step burden shifting framework to determine whether a defendant's special motion to dismiss under section 556 should be granted. *Id.* ¶¶ 16-22. First, the defendant, as the moving party, has the burden to show based on pleadings and affidavits that the anti-SLAPP statute applies by demonstrating that the claims against her are based on her constitutional right to petition. *Id.* ¶ 16. This petitioning activity is question of law for the court to decide. *Id.* If the defendant does not meet her burden to show that the plaintiff's claims are based on her petitioning activity, "the court must deny the special motion to dismiss without any need to review any opposition by the plaintiff." *Id.*

3

Next, if the defendant has met her burden to show that the claims are based on her petitioning activity, the court must then consider the plaintiff's opposition. *Id.* ¶ 17. In his opposition, the plaintiff must present prima facie evidence, via pleadings and affidavits, "that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law and that the defendant's petitioning activity caused actual injury to the plaintiff." *Id.* (quoting *Nader v. Me. Democratic Party*, 2012 ME 57, ¶¶ 20-25, 41 A.3d 551 (internal quotation omitted). If the plaintiff does not meet his prima facie burden, whether due to lack of evidence "on either element or based on some other legal insufficiency, the special motion to dismiss must be granted, either partially or wholly, with no additional procedure." *Gaudette*, 2017 ME 86, ¶ 17, 160 A.3d 1190.

Finally, in departure from *Nader*, and applicable only if the plaintiff meets his prima facie burden regarding "any or all of the defendant's petitioning activities, the special motion to dismiss is not then automatically denied." *Id.* ¶ 18. Instead, the Law Court now requires an "additional procedural component" that requires the trial court, upon request of either the plaintiff or the defendant, to allow the parties "to undertake a brief period of limited discovery, the terms of which are determined by the court after a case management hearing." *Id.* After the discovery period the court is required to hold an evidentiary hearing. *Id.* At the hearing the plaintiff has the burden to show by a preponderance of the evidence that the defendant's petitioning activity was without factual support or any arguable legal basis in law and that the plaintiff suffered actual injury as a result of the petitioning activity. *Id.* If the plaintiff meets his prima facie burden, but neither party avails himself of the evidentiary hearing, the court must decide whether the plaintiff met his burden by a preponderance of the evidence based solely on the pleadings and affidavits submitted by both parties for and against the special motion to dismiss. *Id.*

4

## II. Can Bridget and Randy Meet Their Burden to Show that Their Actions are Petitioning Within the Meaning of Section 556?

In this first step of the burden shifting procedure, Bridget and Randy must show that their activities amount to petitioning.[1] The Legislature has protected petitioning activity by broadly defining it under section 556. *Desjardins v. Reynolds*, 2017 ME 99, ¶ 18, 162 A.3d 228. Section 556 clarifies that "a party's exercise of its right of petition"

> means <u>any written or oral statement made before or submitted to a legislative, executive or judicial body,</u> or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; <u>any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body,</u> or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

(emphases added). In its broad construction of petitioning activities, the Law Court has determined that petitioning includes a letter written to a newspaper for the purpose of "expand[ing] the public consideration of a controversial issue recently considered by the Legislature," *Schelling v. Lindell*, 2008 ME 59, ¶ 12, 942 A.2d 1226, and letters to a newspaper written to influence the outcome in a dispute between a city and a contractor, *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169. Regarding reports to law enforcement, the Law Court stated that "there can be no legitimate argument" that a defendant's report to a sheriff's office of a town official's alleged history of arriving at town meetings drunk after having driven his vehicle there, does not "qualify as petitioning activity." *Desjardins*, 2017 ME 99, ¶ 11, 162 A.3d 228. Additionally, the District

---

[1] David has asked this court to consider the Defendants' intent behind their alleged petitioning activities. The Law Court has not required an inquiry into a defendant's intent, nor suggested that it would be appropriate, and this court declines to begin that inquiry now.

Court of Maine has stated that reports to law enforcement could clearly be covered by section 556. *Lynch v. Christie*, 815 F. Supp. 2d 341, 346 n.6 (2011) (favorably cited by *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 4, 143 A.3d 788).

      **i.**       **Bridget and Randy's Activities that David Complains of.**

Bridget and Randy's alleged actions that David bases his Verified Complaint on are the following. They are taken from his Complaint and summarized.[2]

1.  On July 4, 2013, Bridget called for a police escort to David's house, claiming that she was afraid to go alone and that David had previously assaulted her. ¶ 12.

2.  On August 28, 2013, Bridget claimed to Ava's pediatrician that David had abused her and she knew, or should have known that the statement would lead the doctor to make a report to Child Protective Services. ¶¶ 14-15.

3.  On March 15, 2015, Bridget shipped a package to David's home. David offered Bridget options to get the package, but Bridget called the police department to report that it was stolen and she should have known this was false. ¶¶ 17-19.

4.  Sometime in 2016 Bridget made an anonymous report to Damariscotta Police claiming that David was drinking inside a school building and she knew this to be false. ¶¶ 22-23.

5.  On January 5, 2017, Bridget and Randy called the police to report false claims of abuse, stability, and child safety concerns. ¶ 25.

6.  On January 29, 2017, Randy falsely reported a domestic disturbance and concerns of child safety at David's home, which required Child Protective Services to investigate David. ¶¶ 31-32.

7.  On October 25, 2017, Bridget falsely told school department officials that David was forbidden on school property. ¶ 33.

Bridget and Randy's alleged actions can be broken up into three categories: (1) reports to law enforcement; (2) communications with the children's school; and (3) a report to Ava's

---

[2] For the purposes of these Special Motions to Dismiss they are taken as true. *See Gaudette*, 2017 ME 86, ¶ 42, 160 A.3d 1190.

pediatrician. Bridget and Randy must show that these activities are an exercise of their constitutional right to petition.

### ii.     Randy's Activities.

David's claims against Randy are all based on his two January 2017 reports to law enforcement. On January 5, 2017, he called 911 out of concern for the children's wellbeing and requested their assistance. After review of his affidavit this court determines that as a matter of law Randy's 911 call is petitioning under section 556 because it was reasonably likely to encourage review by the police.

David contends that Randy's January 29 phone call to his "friend and employee, part-time Lincoln County Sheriff's Deputy Michael Elwell for advice" should not be treated as a "petition" because Randy was merely calling his friend for advice, and "the presumption should not be that Mr. Elwell was responding as an agent of the government." However, Randy was not calling for advice from just any friend, but instead called a part-time deputy friend, which suggests that he was calling him in his capacity as a deputy. Moreover, law enforcement officers are mandatory reporters of suspected child abuse. 22 M.R.S. § 4011-A(1)(23). The Law Court has often described section 556's petitioning language as "broadly inclusive." *See Gaudette v. Mainely Media, LLC*, 2017 ME 87, ¶ 12, 160 A.3d 539. Therefore, Randy's call to Deputy Elwell was "reasonably likely to encourage review" within the meaning of section 556 and is petitioning. Randy has met his initial burden to show that his activities are petitioning.[3]

---

[3] David's contention that Randy's calls to law enforcement cannot amount to petitioning because he was not asserting his own interests or rights is illogical and meritless. David attempts to make section 556, a statute that the Law Court has always described as broadly defining petitioning activities, into one that is narrow and could only apply if Randy was petitioning regarding something that affected him directly. In *Gaudette*, the Law Court determined that the defendant's statements to a reporter about her concern that a police department had covered up sexual abuse of minors was indeed petitioning activity covered by section 556. 2017 ME 86, ¶ 23, 160 A.3d 1190.

### iii. Bridget's Activities

Bridget's activities fall into all three categories of statements to (1) law enforcement; (2) the Great Salt Bay School; and (3) to a pediatrician.

#### 1. Statements to Law Enforcement.

David alleges that Bridget called law enforcement multiple times to make false reports of theft, child safety concerns, and her own safety concerns.[4] In her supporting affidavit and exhibits, Bridget has put forth evidence that her reports to the police were petitioning as they were reasonably likely to encourage review by an executive agency: law enforcement. To the extent that Bridget called the police out of concerns for her own safety, due to the long and complicated history between her and David, or out of concerns for her children's safety because of what they were communicating to her, this is petitioning law enforcement for their review, specifically, their assistance. Bridget's contact with law enforcement amounts to petitioning within the meaning of section 556.

#### 2. Statements to Great Salt Bay School.

According to Bridget and David's affidavits the children attend Great Salt Bay School ("School"), a public school in Damariscotta. In his Complaint, David alleges that Bridget made an anonymous report to the School that he was consuming alcohol on school property, and also told the School he was forbidden on school grounds. Bridget denies these claims, but because the court must consider the allegations in David's

---

Even though the defendant was not one of the minors that was allegedly abused, the Court did not disturb the Superior Court's determination that the defendant's statements clearly fit into the broad definition of petitioning activity and that section 556 applied as a matter of law. *Id.*

[4] At the same time, he argues instances that she did not call law enforcement herself and asked Randy not to call, so those communications cannot be petitioning. His argument is without merit. Bridget would have had to speak with law enforcement to make the statements to them that David alleges in his Verified Complaint, and anytime that she did speak with police directly could be considered petitioning.

Complaint as if they are true, the court considers her argument that assuming she did make the statements, they would be protected petitioning activity because they would be "reasonably likely to encourage consideration or review of an issue by a governmental entity." Assuming that Bridget did make these statements to the School, Great Salt Bay is a public school, as opposed to a private school, and therefore fall within section 556's inclusion as a statement to a governmental entity. Moreover, given the nature of what David alleges she told the School, alcohol consumption on school property and that he was forbidden on school property, these statements are reasonably likely to encourage review by the School. This court determines that Bridget's statements to the School, as alleged in David's complaint, amount to petitioning within the broad meaning of the anti-SLAPP statute.

### 3. Statements to the Pediatrician.

In his Complaint, David alleges that Bridget falsely told Ava's pediatrician that David was abusing her, and that Bridget knew, or should have known that this would cause him to be investigated by Child Protective Services ("CPS"). Bridget maintains that Ava, on her own, told the doctor about an incident where David pushed her down and kicked her, but that Bridget did tell the doctor that she was extremely concerned about his behavior. Bridget did not call the police about this event.

It is common knowledge that as a medical examiner a pediatrician is a mandated reporter of suspected child abuse. 22 M.R.S. § 4011-A (1)(A)(3). Regardless of how the statement to the pediatrician came about, because the pediatrician is a mandated reporter, this court determines that Bridget's statements to the doctor are petitioning because it would be reasonably likely to encourage review by CPS, an executive agency. Bridget's statement to Ava's pediatrician is petitioning that falls within section 556.

9

In sum, all of Bridget's activities that David complains of amount to petitioning pursuant to section 556. Additionally, Randy's activities are also petitioning within the meaning prescribed by the anti-SLAPP statute. Because the Defendants have met their prima facie burden to show that they were exercising their right to petition, the court will next determine if David satisfies the burden shifted to him as described in *Gaudette.*

III.    <u>Does David Meet His Burden to Show Prima Facie Evidence that the Defendants' Exercise of Their Right to Petition was (1) Devoid of Any Reasonable Factual Support or Any Arguable Basis in Law; and (2) that it Caused Him Actual Injury?</u>

At the next stage in the burden-shifting framework, the court must consider David's Opposition to the Special Motions. Now the burden shifts to David to show two things regarding Randy and Bridget's petitioning. First, David must show through his pleadings and affidavits "prima facie evidence that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law." *Gaudette*, 2017 ME 86, ¶ 17, 160 A.3d 1190. Second, if he meets that first burden, then he must show that the defendants' exercise of their right to petition caused him actual injury. *Id.* A plaintiff may fail to meet his burden by an absence of evidence on either of the two elements. *Id.* If the plaintiff does not meet his burden, the special motion to dismiss must be granted either partially or wholly. *Id.*

i.    **Does David Meet His Burden Regarding Randy's Petitioning?**

In his affidavit, Randy describes an incident where David showed up to his work, wide eyed and screaming about one of his children's health issues, but left before Randy could call the police. He has seen David pull open the door to the minivan that Bridget was driving while it was in motion, and one of the children were seated inside next to the door. He also describes what he overheard the children telling Bridget about what was happening at David's house during January 29, 2017 incidents when the police were

10

called. Essentially, the children were scared and sounded upset because they said David and his wife were fighting and one child did not think David was sober. Regarding the January 5 incident, he points to a text message from one of the children to Bridget, that she showed him, where the child stated that David was drunk, alluded to fighting that was occurring, and that some of the other kids were scared.

In response, David alleges it was unreasonable for Randy to call the police on either occasion in January because there were no disturbances that would require police intervention. He points to CPS's lack of findings or a report after questioning the children to show that Randy's reports are devoid of any reasonable factual basis.

David has not met his burden to show that Randy's petitioning is devoid of reasonable factual support. Based on Randy's own personal knowledge of David's actions as outlined in his affidavit, combined with the statements of the children that he could overhear and the text message that Bridget showed to him from one of the children,[5] David does not meet his burden to show prima facie evidence that Randy's petitioning was devoid of factual basis.

Moreover, the Law Court has acknowledged the family matters' judge's findings that "the children have been exposed to arguing and fighting between [David] and his current wife, including during times when the parties oldest son believes that [he] was not sober." *Miller v. Nery*, 2017 ME 216, ¶ 6, 173 A.3d 147. This further shows that David did not meet his burden to show that Randy's petitioning to law enforcement was devoid of factual support. Indeed, it is likely that the very instances the Law Court references are

---

[5] Because David has brought suit on behalf of the children, these statements are admissible. They are excluded from hearsay as a statement of an opposing party. M.R. Evid. 801(d)(2).

11

the January events, as the Court cites to the hearings held in District Court in February and April 2017, which addressed the January 2017 phone calls to law enforcement. *Id.* ¶ 4.

Because David does not meet his burden regarding Randy's petitioning, it is unnecessary to analyze whether it caused David actual injury. Accordingly, because David fails to meet the first prong of the burden imposed on him by the anti-SLAPP statute as clarified by *Gaudette*, the court ends its analysis here. Randy's calls to law enforcement amounted to petitioning that David has not shown are devoid of reasonable factual basis, and as such, Randy's Special Motion to Dismiss is granted in its entirety. All of David's claims against Randy stem from his reports to law enforcement, and it is therefore appropriate to dismiss all of the claims against him.[6]

### ii. Does David Meet His Burden Regarding Bridget's Petitioning?

Important to this court's determination regarding whether David meets his burden to show that Bridget's petitioning activities are devoid of any factual support are the family matter court orders that Bridget provides to support her Special Motion to Dismiss. The court takes judicial notice of Judge Raimondi's factual findings in the underlying family matters. The court also takes judicial notice of *Miller v. Nery*, 2017 ME 216, 173 A.3d 147, in which David appealed one of the numerous family matter orders to the Law Court. There, the Court described one of Judge Raimondi's orders in this case as a "detailed and thoughtful judgment." *Id.* ¶ 9. The Law Court recognized that Judge Raimondi determined that

> the children have been exposed to arguing and fighting between [David] and his current wife, including during times when the parties oldest son believes that [David] was not sober. That son worries about [David] because

---

[6] There is nothing in David's complaint that is not based on Randy's petitioning that could support a conspiracy claim against him. That claim is also disposed of by this court's grant of Randy's Special Motion to Dismiss.

12

[he] often smells of alcohol and has driven with the children in the car at times when he did not seem sober.

*Id.* ¶ 6. Bridget further supports her petitioning activity by her affidavit that describes the many contentious years between her and David.

### 1. Petitioning Law Enforcement

David attempts to show that Bridget's petitioning is baseless because her Affidavit "reflects her personal history of (apparent) mental illness," Pl.'s Opp'n Br. 15, and that "it is clear that she knew or should have known her fears of [David] were not based on [sic] reality," Pl.'s Opp'n Br. 16. He also attempts to nitpick pieces and parts of her affidavit to show that her petitioning was unreasonable, such as a portion of her affidavit that references the children not having eaten dinner by 7 p.m. on the night they called her to pick them up. David reads portions of her affidavit in isolation, and not in context with the underlying family matter orders.

One of the instances in which Bridget called the police to escort her to David's home was to pick up a package that was misdelivered there. She provides emails from David that show he was requiring her to meet certain conditions before he would allow her to pick up her package, such as contacting the company that shipped the package and providing him proof that she changed her address with the company. In her affidavit she describes phone calls from the children while at David's home that they were scared, he was drunk and arguing with his wife, and provides a text message to that effect from one of her children. Because of the lengthy litigation in this case resulting in numerous detailed family matters orders, some of which discuss David's inability to co-parent or to act in the best interests of his children, considered alongside Bridget's affidavit and supporting exhibits, this court determines that David fails to meet his burden to show

13

that any of Bridget's petitioning of law enforcement was devoid of any reasonable factual basis.

## 2. Petitioning the School

David argues that Bridget's petitions to the school were not petitioning. This court has determined as a matter of law otherwise. David does not support his burden, in any way whatsoever, to show that Bridget's petitions were devoid of any reasonable factual support. Bridget supports her Affidavit with a Law Court decision and a family matter order that describe instances when at least one of the children have reported that David drank to excess, and at least once drove the children when they believed he was not sober. Importantly, although it was not determined whether alcohol abuse was the source of David's "unreasonable, uncooperative, and often odd behavior," the District Court was within its discretion to order sobriety testing for visitation purposes. *Miller v. Nery*, 2017 ME 216, ¶ 11, 173 A.3d 147. This all supports a reasonable factual basis for Bridget to have made an anonymous report to the School that David was consuming alcohol on the grounds, if in fact she did, and he does not meet his burden to show otherwise, as he provides no evidence or argument regarding the matter.

Next addressing Bridget's alleged October 25, 2017 statement to the School that David was forbidden on School property, David again provides nothing to support his burden to show that Bridget's petitioning was without factual support. Instead, the May 2, 2017 Order Amending Divorce Judgment awards sole parental rights to Bridget. Although David was permitted to express his opinion with respect to educational issues, among others, affecting the children, Bridget was awarded sole parental rights to make decisions on those issues. Specifically regarding the weekly contact schedule, David was allowed "contact with the children at all public events, with 30 minutes notice to [Bridget]." Because David provided nothing to support his burden and this court has not

14

been called upon to determine whether being on school property is akin to a public event, David does not meet his burden to show that Bridget's alleged petition to the school that he was forbidden on School property was devoid of any reasonable factual support.

### 3. Petitioning the Pediatrician

Regarding the conversation with the pediatrician concerning Ava, David again offers no argument or evidence that Bridget's petitioning was baseless, despite it being his burden to show. Bridget maintains that what her children separately told her about the incident that caused the bruises, combined with the bruises that she personally saw on Ava and which she has provided photographs of to this court, show that her petitioning is not baseless. Based on Bridget's affidavit and supporting exhibits, the court determines that David has not met his burden to show that Bridget's petitioning of the Pediatrician is devoid of any reasonable factual support.

In conclusion, David fails to meet his burden to show that any of Bridget's petitioning is devoid of any reasonable factual support. Because he fails to meet the first prong of the burdens imposed on him by section 556 and *Gaudette*, this court does not address whether Bridget's petitioning caused David any actual injury. Accordingly, this court grants Bridget's Special Motion to Dismiss in its entirety.[7]

The Defendants' Special Motions to Dismiss are GRANTED. Any motions not previously addressed by this court are now MOOT. Judgment is entered for Defendants against Plaintiff plus costs and reasonable attorneys' fees.

---

[7] The court has already disposed of all of David's claims against Randy by granting his Special Motion to Dismiss. As was the case there, this court finds nothing in David's complaint that is not petitioning that could be the basis for a conspiracy claim against Bridget. Moreover, a conspiracy of one person simply does not exist. Therefore, that claim is also dismissed.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Dated: March 18, 2019

Daniel I. Billings
Justice, Maine Superior Court