MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 46
Docket:        Oxf-23-366
Argued:        April 9, 2024
Decided:       June 18, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

DELANNA GAREY

v.

STANFORD MANAGEMENT, LLC, et al.

CONNORS, J.

[¶1]  Delanna Garey appeals from a judgment of the Superior Court (Oxford County, *Archer, J.*) granting the motion of Stanford Management and Eve Dunham (collectively Stanford)[1] to dismiss Garey's complaint in its entirety for failure to state claims upon which relief can be granted.  *See* M.R. Civ. P. 12(b)(6).  Garey contends that her complaint conforms with the required notice pleading standard.  *See* M.R. Civ. P. 8(a); *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79.  We conclude that Garey met her burden and vacate the Superior Court judgment with respect to her claims for defamation per se and false light

---

[1]  Although the defendants are referred to collectively as Stanford, they are referred to in their separate capacities when describing individual actions.

2

invasion of privacy; we affirm the dismissal of her claims for declaratory judgment and injunctive relief as moot.[2]

## I. BACKGROUND

[¶2]  "The following substantive facts are taken from allegations in the complaint and are viewed as if they were admitted." *Oakes v. Town of Richmond*, 2023 ME 65, ¶ 3, 303 A.3d 650 (alteration and quotation marks omitted).

[¶3]  Stanford employed Garey as the director of operations of its apartment building (the Muskie Building) in Rumford until it terminated her in January 2023 for alleged poor work performance.

[¶4]  In early February 2023, Stanford and its current director of operations, Eve Dunham, requested that the Rumford Police serve Garey with a criminal trespass notice forbidding her from entering the Muskie Building for one year.  Rumford Police served Garey with the trespass notice on February 6, 2023.  In early March 2023, Stanford and Dunham posted copies of the criminal trespass notice on the Muskie Building, and that same day,

---

[2] The complaint also initially contained a claim for reckless or intentional infliction of emotional distress, but on appeal Garey did not challenge its dismissal.  Garey also initially pled a separate cause of action for punitive damages.  She recognizes, however, that punitive damages are not an independent cause of action and that, to recover such damages, she must prevail on the underlying claim and show that Stanford acted with malice.  *See Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).  Because we reinstate causes of action for defamation and false light and because Garey's complaint alleges that Stanford acted with malice and ill-will, punitive damages remain theoretically recoverable at this early stage of the proceedings.

Dunham sent a letter to the residents of the Muskie Building stating, in relevant part:

> As many of you know, Rumford Island Housing has made recent staffing changes. In accordance with these changes and as a result of the behavior of former employees, Stanford Management has had to take legal and procedural steps to protect our current employees, tenants, and community as a whole.
>
> As a result of these changes, effective immediately, no former employees, are permitted on the premises or within the building at any time, without prior written consent from either the Company Owner, President, Vice President, or Director of Operations.
>
> - Any tenant who invites or allows entry to any former employee of Rumford Island Housing or Stanford Management will, receive a lease violation and/or lease termination.
>
> - If you see any former employees in the building or on the premise, please notify management immediately.

On March 10, 2023, Garey's aunt emailed Dunham asking whether the criminal trespass notice was for personal or professional reasons. Dunham responded that the determination to issue the trespass notice "was made by the Rumford Police department."

[¶5] In May 2023, Garey filed a complaint against Stanford alleging defamation, false light invasion of privacy, and reckless or intentional infliction of emotional distress, and seeking declaratory judgment and injunctive relief. She alleged that Stanford's statements injured her "in her profession, trade, or

4

business" and "could reasonably be understood as (falsely) accusing Garey of committing a crime" and sought compensatory and punitive damages. With respect to her claims for declaratory and injunctive relief, Garey sought a declaration that she was permitted to visit tenants in the Muskie Building despite the criminal trespass notice and that Stanford be enjoined from preventing such visits.

[¶6]  Stanford filed a motion to dismiss under Maine Rule of Civil Procedure 12(b)(6) and, after briefing from the parties, the Superior Court granted Stanford's motion to dismiss Garey's complaint in its entirety, concluding that Garey failed to state claims upon which relief could be granted. The court reasoned that Stanford's statements were not provably false; they were statements of opinion, not of fact; the statements were subject to multiple interpretations and should not be attributed their worst possible meaning; and in the alternative, even if the statements were defamatory, they were conditionally privileged. With respect to the claims for declaratory judgment and injunctive relief, the court concluded that Garey did not have a legal right to enter the Muskie Building property and, therefore, she did not have standing to bring such a claim. Garey timely appealed. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2024).

## II. DISCUSSION

[¶7]  Maine uses the notice pleading standard, which requires only that a complaint "give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief."  *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 16, 19 A.3d 823 (citations and quotation marks omitted).  When evaluating the legal sufficiency of a complaint, we "review it de novo in the light most favorable to the plaintiff, accepting the material facts it alleges as true, to determine whether the complaint could entitle the plaintiff to relief on some theory."  *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 6, 942 A.2d 700.  At the Rule 12(b)(6) stage, the complaint's material allegations are taken as if they were admitted, *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, and dismissal is appropriate "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim."  *Hall v. Bd. of Envtl. Prot.*, 498 A.2d 260, 266 (Me. 1985); *see also Oakes*, 2023 ME 65, ¶ 16, 303 A.3d 650 ("Importantly, because Maine is a notice-pleading jurisdiction, the level of scrutiny used to assess the sufficiency of a complaint is forgiving." (quotation marks omitted)).

6

## A.     The complaint sufficiently alleges defamation.

[¶8]  The elements of a defamation claim are

(1)    a false and defamatory statement concerning another;

(2)    an unprivileged publication to a third party;

(3)    fault amounting at least to negligence on the part of the publisher; [and]

(4)    either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 10, 222 A.3d 1063 (alteration in original).  A defamatory communication is one that "tends . . . to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]."  *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (quoting Restatement (Second) of Torts § 559 (Am. L. Inst. 1977)).  Such statements, when "written falsely about a person's profession, occupation, or official station constitute libel per se."  *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083.  Although to be considered defamatory, the statements must be more than mere opinions and constitute either explicit or implicit assertions of fact, an opinion implying the existence of undisclosed defamatory facts does not escape liability.  *See Lester v. Powers*,

596 A.2d 65, 69 (Me. 1991); *Caron v. Bangor Pub. Co.*, 470 A.2d 782, 784 (Me. 1984).

[¶9]   Liberally construed, Garey's complaint sufficiently alleges that Stanford published statements to the Muskie Building residents that falsely imply that Garey engaged in dangerous conduct such that the community needs protection, an assertion that tends to deter other community members from associating with her.[3] *See Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996).

[¶10]   Stanford argues that, as the Superior Court concluded, its "statement denotes an exercise of management's personal judgment and should thus be considered a statement of opinion."  But as noted in *Caron*, even a statement of opinion is actionable if it falsely implies defamatory facts. 470 A.2d at 784.  Stanford also contends that even if the statement implies undisclosed facts, we should reject the most negative interpretation of the implication.  But doing so would alter the standard at this preliminary stage of the proceedings.  We evaluate whether the defendants are on notice of the claims against them by interpreting the meaning of an allegedly defamatory

---

[3] As the Superior Court noted, the letter to building residents does not mention Garey by name. But Stanford sent the letter the same day that it posted the criminal trespass notice—naming Garey—around the Muskie Building.  The combination and timing of the criminal trespass notice and the letter to building residents is sufficient at this stage of the proceedings to satisfy that the letter is "of and concerning" Garey. *See Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 717–18 (Me. 1987).

statement in the light most favorable to the plaintiff's claim within the context of the complaint. *Compare Bog Lake Co.*, 2008 ME 37, ¶ 6, 942 A.2d 700 ("When a complaint is dismissed as legally insufficient, we review it de novo in the light most favorable to the plaintiff, accepting the material facts it alleges as true, to determine whether the complaint could entitle the plaintiff to relief on some theory."), *with Bakal*, 583 A.2d at 1029-30 (considering the broader circumstances and history between the parties to interpret the meaning of the term "threats" in reviewing an order on a motion for summary judgment). When viewed in the light most favorable to her claims at this preliminary stage, Garey's complaint sufficiently alleges Stanford's implication of undisclosed defamatory facts.

[¶11]  Publication of a defamatory statement alone is insufficient to support Garey's claim; Stanford must also have acted negligently. *See Waugh*, 2019 ME 179, ¶ 10, 222 A.3d 1063.  Here, Garey alleges that Stanford was at least negligent in making the defamatory statements, if not acting with reckless disregard for the statement's truth or falsity.

[¶12]  Finally, Garey's complaint must allege either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Id.*  In the defamation context, special harm "means

economic or pecuniary harm." *Id.* ¶ 11. Garey's complaint satisfies the actionability element for two reasons. First, the complaint alleges libel because the alleged defamatory statement was in writing, and "[a] charge which is published in writing is regarded as carrying more weight than one which is made verbally. It is accordingly not necessary in a case of libel that the charge import a crime, nor is it essential that special damage be alleged." *Briola v. J. P. Bass Publ'g Co.*, 138 Me. 344, 347, 25 A.2d 489, 490 (1942). Second, even if the alleged statements were slander as opposed to libel, the complaint alleges defamation per se, i.e., the statement "conveys imputation of a crime . . . or of matters affecting plaintiff in [her] business, trade, profession, office or calling." *Cohen v. Bowdoin*, 288 A.2d 106, 110 (Me. 1972).

[¶13] In sum, Garey's defamation claim survives the motion to dismiss.

**B.    The complaint sufficiently alleges false light invasion of privacy.**

[¶14] To successfully plead a claim for false light invasion of privacy, the plaintiff must allege that the defendant gave publicity to a matter concerning the plaintiff that places her before the public in a false light, that the false light would be highly offensive to a reasonable person, and that the defendant had knowledge of or recklessly disregarded the falsity of the publicized matter and

the false light in which it cast the plaintiff.[4] *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189.

[¶15]  Garey alleges that Stanford falsely portrayed her as dangerous and that a reasonable person would find being publicly labeled as dangerous highly offensive.  She alleges that, in giving publicity to this matter, Stanford acted with reckless disregard as to the falsity of the portrayal and the light in which it placed her.  Although false light is only actionable "when there is such a major misrepresentation of [her] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in [her] position," Restatement (Second) of Torts § 652E cmt. c, we conclude that an alleged false implication that a person is dangerous and must be protected against sufficiently misrepresents her character or activities to support a false light claim.  *See id.*  (distinguishing "minor errors, such as a wrong address for [her] home, or a mistake in the date when [she] entered [her] employment or similar unimportant details of [her] career" from misrepresentation of one's "character, history, activities, or beliefs").  Finally, while it is arguable that

---

4  The term "publicity," as used here, differs from "publication" in the defamation context.  *See Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189.  In a defamation claim, publication "is a word of art, which includes any communication by the defendant to a third person.  'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977)).

dissemination of the allegedly false light statements only to tenants of an apartment building falls short of communication to the public at large, we again cannot say that the allegations necessarily fail at this preliminary stage of the proceedings.

[¶16] We therefore conclude that Garey has sufficiently alleged a claim for false light invasion of privacy.

## C. Stanford's assertion of a conditional privilege did not affect the sufficiency of Garey's complaint and was not a basis for dismissal.

[¶17] The court accepted Stanford's argument in its motion to dismiss that, even if its statements are actionable, they are conditionally privileged and cannot support claims for defamation or false light invasion of privacy. Conditional privilege is an affirmative defense to claims for defamation and false light invasion of privacy that "arises in settings where society has an interest in promoting free, but not absolutely unfettered speech." *Rice v. Alley*, 2002 ME 43, ¶ 22, 791 A.2d 932 (quotation marks omitted); *see also Boulet v. Beals*, 158 Me. 53, 57, 177 A.2d 665, 667 (1962) (evaluating the application of the privilege to a defamation claim); *Sullivan v. Conway*, 157 F.3d 1092, 1098-99 (7th Cir. 1998) ("[T]he same privileges are applicable to the false-light tort as to the defamation tort. Otherwise privilege could be defeated by relabeling." (citations omitted)). Determining whether a conditional privilege applies in a

given setting is a question of law, but "whether the defendant abused the privilege is a question of fact." *Rice*, 2002 ME 43, ¶ 21, 791 A.2d 932.

[¶18] We have adopted the Restatement's approach to determine whether the circumstances of a statement justify a conditional privilege. *See id.* In doing so, we have noted that "[t]he Restatement does not prescribe a list of particular settings to which conditional privileges are restricted. Instead, it uses a weighing approach based on the totality of the circumstances, in view of the interests of the publisher and the recipient. Any situation in which an important interest of the recipient will be furthered by frank communication may give rise to a conditional privilege." *Lester*, 596 A.2d at 70 (citation omitted). But even if Stanford's and the Muskie Building residents' interests in the communication justify a conditional privilege, Stanford can lose that privilege through abuse, i.e., engaging in reckless disregard for the truth or falsity of the published statements or acting with ill will. *See Cole*, 2000 ME 104, ¶ 7, 752 A.2d 1189. When a defendant establishes the existence of a conditional privilege, "the burden shifts to the plaintiff 'to come forward with evidence that could go to a jury that [the defendant] abused the privilege.'" *Id.* (alteration in original) (quoting *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989)).

[¶19] In her complaint, Garey was not required to overcome, or even anticipate, Stanford's assertion of a conditional privilege, and Stanford has not established that the privilege applies merely by including it in its motion to dismiss. Moreover, even if the face of Garey's complaint suggests a potentially applicable conditional privilege, she alleges that Stanford abused the privilege by acting with malice or ill will when it published the alleged defamatory statements with knowledge of their falsity or with reckless disregard for their truth or falsity. *See Lester*, 596 A.2d at 69 n.7 ("Loss of a conditional privilege through abuse may also occur when the statement is made, not for the purpose of protecting the interest giving rise to the privilege, but out of other motives entirely, such as spite or ill-will.").

[¶20] Hence, again, at this early stage of litigation, Garey's claims for defamation and false light remain actionable and should not have been dismissed based on Stanford's assertion of a potentially viable but yet-to-be-established affirmative defense.

**D.   The declaratory judgment and injunctive relief claims are moot.**

[¶21] Finally, Garey's declaratory judgment and injunctive relief claims are moot because she is no longer precluded from entering the Muskie Building property. *See Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 12,

738 A.2d 1239 ("Courts can only decide cases before them that involve justiciable controversies."). Rumford Police served Garey with the criminal trespass notice on February 6, 2023. By its terms, the trespass notice was effective for one year, meaning that it expired on February 6, 2024. Because Garey sought declaratory and injunctive relief to allow her to visit tenants of the Muskie Building, something she is no longer prohibited from doing, there is no justiciable controversy on which a decision from this Court would practically affect either party's position. *Brunswick Citizens for Collab. Gov't v. Town of Brunswick*, 2018 ME 95, ¶ 7, 189 A.3d 248 ("In general, a case is moot and therefore not justiciable if there are insufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources." (quotation marks omitted)). Therefore, we affirm the court's dismissal of Garey's declaratory judgment and injunctive relief claims.

The entry is:

> Judgment vacated as to Counts 1 and 2.
> Judgment affirmed as to Counts 5 and 6.
> Remanded to the Superior Court for proceedings consistent with this opinion.

Christopher S. Berryment, Esq. (orally), Mexico, for appellant Delanna Garey

Jeffrey D. Russell, Esq. (orally), and Emily C. Waddell, Esq., Verrill Dana LLP, Portland, for appellees Stanford Management, LLC, and Eve Dunham

Oxford County Superior Court docket number CV-2023-23
FOR CLERK REFERENCE ONLY